OPINION OF THE COURT
Stanley L. Sklar, J.
This application for renewal/reargument of defendant Or-tho Pharmaceutical Corporation’s summary judgment motion raises issues previously unresolved in New York concerning the availability of summary judgment to a pharmaceutical manufacturer based upon an affidavit from an "informed intermediary”, namely, the physician who prescribed the manufacturer’s product.
First, this court holds that the drug manufacturer has the burden of proving, by means of a physician’s affirmative statement, that, even if adequately warned, the treatment provided would have been virtually identical to that actually rendered. Summary judgment is appropriate only when that burden has been met to the level of negating the existence of a genuine factual issue. Second, in attempting to meet that burden, unless the physician’s statement is self-disserving, the issue of the credibility of the physician’s affidavit should ordinarily be left for the trier of the facts and should not be resolved by the court on a motion for summary judgment.
Ortho has failed to provide the necessary evidence to negate the existence of a genuine issue of material fact. In addition, it has failed to establish as a matter of law that it discharged its duty to adequately inform plaintiff’s physician of the newly discovered risks attributed to the intrauterine device.
Accordingly, its application is denied.
ADDITIONAL FACTS
Ortho, in the instant motion, seeks to fill in the gaps in the affidavits appended to its earlier motion.
Specifically, it appends the affidavit of Chris McDowell, an Ortho employee, who states that the "Dear Doctor” letter "was mailed on November 4, 1977 to all obstetricians, gynecologists and family practitioners in the United States”. In addition, Ortho provides the supplemental affidavit of Dr. Storch, in which she claims that "[p]rior to December 1977, I *752 received a 'Dear Doctor’ letter and revised package insert for Lippes Loop”. Dr. Storch also states that when she inserted the Lippes Loop into Ms. Hoffman-Rattet, she (Dr. Storch) was aware that "infertility was a possible complication of pelvic infection”. Dr. Storch also reiterates the assertion contained in her original affidavit, namely, that at the time of the insertion she was aware that there was a risk of PID associated with IUDs, including the Lippes Loop. Finally, Dr. Storch claims that she prescribed Lippes Loops after December 1977.
Ortho now argues that this additional data, coupled with that furnished on the original application, establish (1) that the updated material was sent by Ortho to Dr. Storch and that she received it before she saw Ms. Hoffman-Rattet in December 1977, and, therefore, Ortho discharged its duty to adequately warn Dr. Storch; (2) that even if Dr. Storch did not read this new material before seeing Ms. Hoffman-Rattet in December 1977, because Dr. Storch did prescribe the Lippes Loop after December 1977, presumably after she read the update, one can infer that had Dr. Storch read it before seeing Ms. Hoffman-Rattet, any treatment provided would not have varied from that actually rendered; and (3) because Dr. Storch independently knew that some Lippes Loop users suffered from PID and that PID could lead to infertility, her actions constituted an intervening cause of Ms. Hoffman-Rattet’s injuries sufficient to relieve Ortho of all liability as a matter of law.
I shall now address, seriatim, each of these arguments, none of which justifies summary judgment in Ortho’s favor.
UPDATE — CONVEYED/rECEIVED
With respect to whether the new warnings were conveyed, Ortho now provides its employee’s affidavit, confirming that they were sent in November 1977. Aside from the fact that this information could have been provided on the original motion and no excuse has been offered for the failure to do so, because it is an assertion exclusively within the knowledge of the moving party, it is subject to an attack on credibility. (Cohen v St. Regis Paper Co., 64 NY2d 656, 658 [1984].) Although, where an issue of credibility is involved, the granting of summary judgment is generally inappropriate (Frame v Markowitz, 125 AD2d 442 [2d Dept 1986]; Koen v Carl Co., 70 AD2d 695 [3d Dept 1979]), here Dr. Storch also claims to have received the updated warnings. Because it was not necessarily *753 in her best interests to so have admitted, the court will assume for purposes of this motion that they were received, i (See, Albouyeh v County of Suffolk, 62 NY2d 681, 683 [1984]; Wolfgruber v Upjohn Co., 72 AD2d 59, 63 [4th Dept 1979], affd 52 NY2d 768.)
Dr. Storch, while admitting that she received the update before seeing the plaintiff in December 1977, never admitted that she (Dr. Storch) read it. If Dr. Storch did not in fact read the new warnings, this may have been due to the inadequacy of the "Dear Doctor” letter.
"An adequate warning is one reasonable under the circumstances. Sterling Drug, Inc. v. Yarrow, 408 F.2d 978, 992, 993 (9th Cir. 1969); Ortho Pharmaceutical Corp. v. Chapman, 388 N.E.2d at 553. A warning may be inadequate in factual content, in expression of the facts, or in the method by which it is conveyed. Ortho Pharmaceutical Corp. v. Chapman, 388 N.E.2d at 552.” (Brochu v Ortho Pharm. Corp., 642 F2d 652, 657 [1st Cir 1981].) The manufacturer must bring home the warnings to the doctor. (Richards v Upjohn Co., 95 NM 675, 625 P2d 1192, 1196 [1980]; Wooderson v Ortho Pharm. Corp., 235 Kan 387, 681 P2d 1038, 1050 [1984], cert denied 469 US 965.) Warnings may be inadequate if they "could have been reasonably found to be lacking in emphasis, timeliness and attention inviting qualities * * * [or where they are] reluctant and lacking in a sense of urgency”. (Sterling Drug v Yarrow, 408 F2d 978, 994 [8th Cir 1969], supra; Ross v Jacobs, 684 P2d 1211, 1214 [Ct App, Okla 1984].)
In the instant case a jury could reasonably find the "Dear Doctor” letter to have been inadequate. As noted above, the letter somewhat reluctantly seemed to indicate that Ortho was only sending it out because the FDA required it of all IUD manufacturers. Thus, a doctor receiving it could believe that the new warning contained generalizations about all IUDs. Dr. Storch, having participated in Lippes Loop studies, may have believed that her specific knowledge about the Lippes Loop superseded any generalized information. Further, the letter made no mention of newly discovered dangers.
Moreover, as also indicated above, the letter suggested that the new FDA regulation dealt with prospective users only in that it stated that "according to the regulation [the Patient Information Booklet] is to be given to all patients who desire a Lippes Loop prior to the insertion”. It also recited that Ortho believed that the doctor would find the booklet and package *754 insert useful "when you are considering the Lippes Loop for your patients”.
Accordingly, a jury could find that a physician in Dn Storch’s position might reasonably have believed it unnecessary to read the new materials unless that physician was contemplating prescribing a Lippes Loop for a patient for the first time. Thus, the evidence submitted does not meet the New York standard, to obtain summary judgment, that the warnings are adequate as a matter of law. (Cooley v Carter-Wallace, Inc., 102 AD2d 642, 649 [4th Dept 1984]; Baker v St. Agnes Hosp., 70 AD2d 400 [2d Dept 1979].)
LATER USERS
Ortho also argues that, because Dr. Storch did indeed prescribe the Lippes Loop for new patients after receiving the "Dear Doctor” letter, it (Ortho) is relieved of liability because this means that had Dr. Storch read the updated material before seeing Ms. Hoffman-Rattet, she (the plaintiff) would have continued to use the Lippes Loop.
This assertion is speculative only. New patients, before using the Lippes Loop, had to be given, pursuant to the new FDA regulation, an information booklet, presumably because it was deemed necessary that they play a more active role in choosing a means of birth control and that they be well informed before deciding to opt for the Lippes Loop. Accordingly, had Dr. Storch read the updated material before seeing Ms. Hoffman-Rattet, we do not know whether she (Dr. Storch) would have decided to give the patient information booklet to Ms. Hoffman-Rattet as she (Dr. Storch) presumably did with new users after December 1977. Nor do we know that even had the doctor done so whether this would have caused Ms. Hoffman-Rattet to ask that the IUD be removed. Accordingly, what Dr. Storch did with respect to new Lippes Loop users is irrelevant with respect to Ms. Hoffman-Rattet.
INTERVENING CAUSE
Ortho also asserts that even if Dr. Storch did not read the new warnings before seeing Ms. Hoffman-Rattet in December 1977 because she (Dr. Storch) knew at the time of the insertion of the Lippes Loop of the association between the loop and contracting PID, and that PID could lead to infertility, her actions were intervening events which relieved Ortho of liability.
*755 Before reaching the substance of this claim I must address a threshold issue, credibility. Ortho argues that Dr. Storch’s admissions regarding her independently acquired knowledge must be credited as a matter of law because she is effectively accepting guilt and confirming that, regardless of the adequacy of the warnings, she would not have done anything differently. In addition, Ortho urges that Dr. Storch’s affidavit must be viewed as beyond an attack on credibility because she cannot be held financially responsible for plaintiff’s injuries, since the action has been dismissed against her on Statute of Limitations grounds, and because Ortho now represents that it will never seek any indemnification from Dr. Storch in the event that it is held liable. Thus, Ortho asserts that Dr. Storch had no motive to lie. These arguments are without merit. First, Dr. Storch did not say anything that amounted to a concession of fault on her part. Second, the absence of a financial incentive to prevaricate does not eliminate all other motives (e.g., to preserve her reputation or to retaliate because the plaintiff sued her).
Although there are instances in which a party or interested witness makes statements about matters exclusively within that person’s knowledge, which statements, being against that person’s interest, are a sufficient basis upon which to grant summary judgment in favor of a defendant (see, Albouyeh v County of Suffolk, 62 NY2d 681, 683 [1984], supra; Wolfgruber v Upjohn Co., 72 AD2d 59, 63 [4th Dept 1979], affd 52 NY2d 768, supra; Stanback v Parke, Davis & Co., 657 F2d 642, 644 [4th Cir 1981]; Odgers v Ortho Pharm. Corp., 609 F Supp 867, 880, 881 [ED Mich 1985]), this is not such a case. All that Dr. Storch has admitted is that she was aware from the literature that there were documented cases of PID among Lippes Loop users and that she knew that PID could lead to infertility. These statements are clearly in her interest because it is unlikely that a physician whose reputation is at stake would admit that she failed "to remain informed of current medical and scientific developments where such an admission may be tantamount to an admission of malpractice.” (Seley v Searle & Co., 67 Ohio St 2d 192, 201, n 5, 423 NE2d 831, 839, n 5 [1981]; Holley v Burroughs Wellcome Co., 74 NC App 736, 330 SE2d 228, 234 [1985], affd on other grounds 318 NC 352, 348 SE2d 772 [1986].) Here there is no affirmative statement by Dr. Storch that had she received and read the updated materials she would have ignored it and done nothing differently. Nor is there a statement by her that her knowledge about the *756 connections between PID and the Lippes Loop and PID and infertility was coextensive with that contained in the updated warnings. Thus, Dr. Storch has said nothing that is against her interest.
Because Dr. Storch, as an actor in the transaction in question, is an interested witness, her testimony is subject to an attack on credibility. (Cohen v St. Regis Paper Co., 64 NY2d 656, 658 [1984], supra.) Further, because her self-serving testimony referred to matters exclusively within her knowledge, her credibility may not be decided by the court but rather should be left for the trier of facts. (Koen v Carl Co., 70 AD2d 695 [3d Dept 1979]; Frame v Markowitz, 125 AD2d 442 [2d Dept 1986], supra; Mortimer v Lynch, 119 AD2d 558 [2d Dept 1986].)
With respect to the substance of her assertions, as noted above, Dr. Storch never indicated that her independently acquired knowledge was coextensive with the information set forth in the updated warnings. She did not state, for example, that she knew that the risk of PID and hence infertility was greater for Lippes Loop users as contrasted with nonusers.
Moreover, even if Dr. Storch was aware that users of IUDs generally were subject to a greater risk of PID and infertility, assuming that Dr. Storch did not read the updated warnings before seeing Ms. Hoffman-Rattet, the earlier warnings, dealing specifically with the Lippes Loop, alone or coupled with Dr. Storch’s knowledge gained from her participation in the Lippes Loop study, may have diluted any generalized independent knowledge that Dr. Storch had acquired. (See, Stevens v Parke, Davis & Co., 9 Cal 3d 51, 507 P2d 653, 663 [1973]; Hamilton v Hardy, 37 Colo App 375, 549 P2d 1099, 1109-1110 [1976].) For example, Ortho, in the earlier prescribing information, estimated that the rate of occurrence of PID in Lippes Loop users was essentially the same as that occurring in nonusers. This affirmative assertion seems to be a distortion of the state of knowledge at the time. Specifically, various medical articles appended to the motion to reargue/renew indicate that it was not possible to accurately compare the rate of PID between users and nonusers because reliable statistics were not available (Starch supplemental affidavit, exhibit B, Tietze, Contraception with Intrauterine Devices, at 1051; Advisory Committee on Obstetric and Gynecology, Report on Intrauterine Contraceptive Devices, at 32; Wright, Acute Pelvic In *757 flammatory Disease in an Indigent Population, at 980). Thus, it is easy to envision how independently acquired knowledge could become undercut if the physician read the inadequate and misleading materials provided by the pharmaceutical company.
Accordingly, it cannot be said as a matter of law that Dr. Storch’s knowledge was an intervening cause of Ms. HoffmanRattet’s injuries because Ortho could reasonably have foreseen that its allegedly inadequately conveyed updated warnings would have induced a physician to rely on the earlier warning and, therefore, to prescribe the Lippes Loop despite the physician’s independent knowledge of the Loop’s dangers. (Stevens v Parke, Davis & Co., 9 Cal 3d 51, 507 P2d 653, 663, supra; Hamilton v Hardy, 37 Colo App 375, 549 P2d 1099, 1109-1110, supra.)
Finally, with respect to the issue of intervening cause, although no New York court has addressed this issue, other courts have held that the plaintiff does not have the burden of proving what the physician might or might not have done if fully informed. (Wooderson v Ortho Pharm. Corp., 235 Kan 387, 681 P2d 1038, 1057 [1984], cert denied 469 US 965, 105 S Ct 365, supra; Seley v Searle & Co., 67 Ohio St 2d 192, 423 NE2d 831, 839 [1981], supra; Hamilton v Hardy, 37 Colo App 375, 549 P2d 1099, 1109 [1976], supra.) Once a plaintiff establishes that an inadequate warning has been given, a presumption arises that the inadequacy was a proximate cause of the pharmaceutical item in question having been prescribed or continued. (Seley v Searle & Co., 67 Ohio St 2d 192, 423 NE2d 831, 838, supra.) This presumption may then be rebutted by affirmative evidence introduced by the defendant showing that even if adequately informed, the physician would still have prescribed the item. (Supra, at 838; Odgers v Ortho Pharm. Corp., 609 F Supp 867, 880, 881 [ED Mich 1985], supra; Stanback v Parke, Davis & Co., 657 F2d 642, 645 [4th Cir 1981], supra; see generally, Richards v Upjohn Co., 95 NM 675, 625 P2d 1192, 1197 [1980], supra; Fraley v American Cyanamid Co., 589 F Supp 826, 827 [1984].) This court is persuaded by the reasoning of these out-of-State cases and adopts those rules. Here, Ortho has failed to come forward with Dr. Storch’s affirmative statement that had adequate warnings been conveyed she would have proceeded in the same manner as she did. Accordingly, Ortho has failed to meet its burden of *758 proving that Dr. Storch’s actions were an intervening cause relieving Ortho of liability.
In sum, because Ortho has neither proved as a matter of law that its updated warnings were adequate nor that Dr. Storch’s actions constituted an intervening cause, the motion to renew/reargue is denied in toto.
[Portions of opinion omitted for purposes of publication.]