■ STUART GLUCKSMAN, Respondent, v HALSEY DRUG Co., INC., Appellant and Third-Party Plaintiff-Appellant, et al., Defendant. ZENITH LABORATORIES, Third-Party Defendant-Appellant.—Order, Supreme Court, New York County (David Saxe, J.), entered on or about July 10, 1989, which granted plaintiff's motion for reargument of a prior order of the same court and, upon reargument, denied defendant Halsey Drug Co., Inc.'s motion for summary judgment, unanimously reversed, on the law, and summary judgment granted to defendant Halsey, without costs.

Plaintiff, suffering from an asthmatic bronchitic problem, was treated by defendant Dr. Phillip M. Rogers, who prescribed a generic drug, prednisone. After taking this medication, plaintiff developed the degenerative condition known as bilateral aseptic necrosis of the femoral head, eventually

necessitating hip replacement surgery. Plaintiff contends that he developed this condition as an adverse reaction to prednisone, and he commenced this action against Dr. Rogers for malpractice.

Defendant Halsey Drug Co., Inc. manufactures generic prednisone tablets for sale to doctors and pharmacies. The active ingredient in said tablet, the drug prednisone, is manufactured by Zenith Laboratories and supplied to Halsey. Halsey merely puts the prednisone in tablet form. Plaintiff alleges that the prednisone tablets he ingested were manufactured by Halsey and he asserted three causes of action against Halsey sounding in products liability. Halsey then impleaded Zenith, as the manufacturer of the drug.

After extensive discovery, Halsey moved for summary judgment dismissing the complaint against it. Halsey submitted evidence that prednisone has well-known risks of possible adverse side effects, including information in the Physician's Desk Reference that aseptic necrosis of femoral heads is a possible adverse reaction. Halsey also demonstrated that it included warnings of the risk in an insert in its packaging, fully disclosing, in accordance with Food and Drug Administration guidelines, the possible adverse side effects of prednisone, including the risk of development of aseptic necrosis of the femoral heads. Halsey also submitted the deposition testimony of Dr. Rogers, which indicated that he is a board-certified specialist in internal and pulmonary medicines, fully familiar with the use of prednisone in the treatment of patients with bronchial asthma, and aware that aseptic necrosis of the femoral heads is a possible adverse reaction associated with prednisone treatment. Dr. Rogers admitted that he discussed with the plaintiff some of what he termed the "more common" possible side effects of prednisone treatment, but never disclosed to him the possibility of aseptic necrosis of the femoral heads because Dr. Rogers believed that this was so rare an occurrence as to be of no concern.

Based on these uncontradicted facts, Halsey argued that it should be entitled to summary judgment based on the long-established law that the treating physician is an "informed intermediary" and that his fault in failing to warn of the dangers is an intervening cause relieving it from liability. The motion court originally granted Halsey's motion and dismissed the case against it on this basis.

Subsequently, plaintiff moved for renewal or reargument claiming that recently decided case law, dispositive of the

issues at hand, was not before the court when it decided the original motion. *(Sacher v Long Is. Jewish-Hillside Med. Center,* 142 AD2d 567; *Hoffman-Rattet v Ortho Pharm. Corp.,* 135 Misc 2d 750.)* Relying solely on the *Sacher* case, the IAS court granted the motion, vacated its prior order dismissing the complaint as against Halsey, and instead denied Halsey's original motion for summary judgment.

We find that under the controlling principles of law, the IAS court properly granted Halsey summary judgment in the first instance, and that the cases submitted by plaintiff on the subsequent motion provided no basis to alter that result. The manufacturer of a prescription drug has a duty to warn of all potential dangers which it knows or should know, and must take such steps as are reasonably necessary to bring that knowledge to the attention of the medical profession *(e.g., Baker v St. Agnes Hosp.,* 70 AD2d 400). However, the manufacturer's duty is owed to the medical community, and not to the patient. The doctor acts as an "informed intermediary" between the manufacturer and the patient, evaluating the patient's needs, assessing the risks and benefits of available drugs, and prescribing and supervising their use. *(Wolfgruber v Upjohn Co.,* 72 AD2d 59, *affd* 52 NY2d 768; *see also, Lindsay v Ortho Pharm. Corp.,* 637 F2d 87 [applying New York law].) Where the warning given to the physician, through the Physician's Desk Reference and through package inserts and/or other literature, gives specific detailed information on the risks of the drug, the manufacturer may be absolved from liability *(Wolfgruber v Upjohn Co., supra).* Whether the content of the warning is adequate depends upon the physician involved. A warning need be given only where the situation calls for it. *(Lindsay v Ortho Pharm. Corp.,* 637 F2d, *supra,* at 92.) A plaintiff must demonstrate that the warning was inadequate and that the failure to adequately warn of the dangers of the drug was a proximate cause of his or her injuries.

Plaintiff failed to make the necessary showing on the instant motion. Halsey, on the other hand, demonstrated that its warnings were specific and widely furnished to the medical community through the Physician's Desk Reference and package inserts, and that such warnings included the possible adverse reaction of aseptic necrosis. Moreover, Dr. Rogers, a board-certified specialist in this field, testified that he was independently aware of the dangers involved. Accordingly, the alleged failure of Halsey to warn of the dangers was not the proximate cause of plaintiff's injury. The treating physician's decision not to inform the plaintiff of the risk of aseptic

necrosis of the femoral heads, even while he warned the plaintiff of other possible side effects, was an intervening cause, severing the causal connection of Halsey to plaintiff's injury. Accordingly, summary judgment should have been granted dismissing the complaint as against Halsey.

The cases cited by plaintiff on his reargument and renewal motion do not compel a different result. In *Hoffman-Rattet v Ortho Pharm. Corp.* (135 Misc 2d 750, *supra*), the defendant doctor inserted a Lippes Loop IUD in the plaintiff, and thereafter received a "Dear Doctor" update warning of newly discovered dangers. The court denied the pharmaceutical company defendant's motion for summary judgment on the "informed intermediary" ground because it found questions of fact as to the adequacy of the substance of the updated warning. Here, the avowed warnings given by Halsey were specific and widely disseminated before Dr. Rogers prescribed plaintiff's treatment.

*Sacher v Long Is. Jewish-Hillside Med. Center* (142 AD2d 567, *supra*), relied upon by the IAS court in granting reargument, is also inapposite. The brief memorandum decision in that case indicates that there was a question as to the adequacy of the warning involved, as well as matters within the party's exclusive knowledge and self-serving statements by a codefendant. Here, to the contrary, the fulfillment of Halsey's duty with respect to the adequacy of the warning was established by the specific warnings in the package insert and the widely disseminated information in the Physician's Desk Reference, all of which were uncontradicted. Moreover, here the statements of the codefendant, Dr. Rogers, were admissions against his own self-interest and not self-serving. In sum, the *Sacher* case does not compel a denial of summary judgment under the clear-cut facts of this case, and the IAS court improvidently reversed itself in vacating the grant of summary judgment to Halsey. Accordingly, the order granting reargument is reversed, and the motion for summary judgment dismissing the complaint as against defendant Halsey is granted. Concur—Sullivan, J. P., Carro, Rosenberger, Kassal and Ellerin, JJ. [*See*, — AD2d — (July 10, 1990).]