■ ALESSANDRA SUMOWICZ, Respondent, v GIMBEL BROTHERS, INC., Doing Business as GIMBEL's NEW YORK, Appellant.— Order of the Supreme Court, New York County (Richard D. Rosenbloom, J.), entered on or about August 25, 1989, which, following a jury trial on liability, set aside a verdict in favor of defendant Gimbel's New York, directing that a new trial be held, is unanimously reversed, on the law, the jury verdict reinstated, and the complaint is dismissed, without costs or disbursements.

Plaintiff, a 15-year-old girl, struck her eye on the edge of a clear glass display case in Gimbel's. Plaintiff bent down to pick up a sweater in the case and felt a sudden pain in her eye. Lighting conditions in the area were dim. Plaintiff was looking at the sweater she was reaching for and did not see the edge of the clear glass shelf at the instant of impact. She groped towards the spot where her face was and felt the edge of a vertical glass pane. Its protruding edge was glass, with no breakage or roughness. Plaintiff and her mother were brought to a security office. Plaintiff's mother filled in the report form blank for the cause of the accident as "sharp plastic and sales tag".

The trial was bifurcated, with the issue of liability to be tried first. It was agreed that reference to injuries was limited to the statement that plaintiff suffered an "abrasion to her left cornea".

Norman Wesler, a consulting engineer, testified for the plaintiff that the display case was unsafe for pedestrian use in defendant store since it was in a high-traffic area and it was placed on the floor so customers had to step towards it and take merchandise out. It was constructed of glass, without beveled edges. Mr. Wesler concluded his testimony by stating that in his opinion the edge of the glass was a proximate cause of the "abrasion injury".

The display case was not available at trial nor was there any evidence of testing, measuring or photos of the case.

The only witness called by defendant was William Marletta, a "safety professional". He held a junior college degree in fire prevention technology, an undergraduate degree in geology and a Master's in occupational safety and health. His job experience consisted of 10 years as an insurance industry consultant and loss prevention consultant.

Marletta's testimony opined that the shelving in question had beveled edges since the nature of the injury was not "a cut, a laceration". It was more likely to have occurred by a beveled edge, or perhaps even a price tag.

Plaintiff objected to the above testimony on the ground that Marletta had no engineering background and since defendant offered nothing other than the hypothetical question to suggest that there were beveled edges on the shelves.

On cross-examination, it was established that Marletta's training in human anatomy or medicine was limited to one undergraduate course in anatomy and a course in "vapors" at New York University Medical School. He had never studied the anatomy of the human cornea, its mechanics or its physical integrity.

Marletta was shown an example of glass without a beveled edge and asked whether, in his "scientific" opinion, contact with a moving eye would produce an abrasion or a laceration. Plaintiff objected on the basis of the witness's lack of medical knowledge and moved to strike his opinion testimony in its entirety. This objection was overruled and the motion was denied. The witness stated that it would cause a laceration and that only movement across a "flat" surface would cause abrasion.

The jury rendered a verdict in favor of the defendant, answering the question of whether there was negligence in the negative.

After trial, plaintiff moved to renew and reargue her trial motion to set aside Marletta's testimony. The court granted the motion to reargue, struck Marletta's testimony and ordered a new trial.

The court erred in striking Marletta's testimony. Both experts testified that they have professional experience, as well as academic exposure, to the study of body mechanics, as well as the impact of nonhuman objects on human bodies. Their professional responsibilities included ways to avoid certain types of injuries in different types of physical environments. The experts testified based on an expertise directly related to the disputed issues at trial (see, Karasik v Brid, 98 AD2d 359, 362). Since it was agreed by the parties that reference to the injuries was limited to the statement that plaintiff suffered an "abrasion to her left cornea", the testimony did not require a medical diagnosis.

Although plaintiff challenges the capacity of defendant's nonmedical expert to testify, her own witness was a nonmedi-

cal witness. Both plaintiff's and defendant's experts testified as to the relationship between the injury and the modality of causation. Plaintiff's expert also testified as to the mechanical means by which a specific injury could be sustained. While plaintiff asserts that this information by her expert was only brought out by appellant's cross-examination of the expert, the record reveals that *on direct* examination, the following testimony was elicited from plaintiff's expert:

"Q And I would like you, finally, to add the following facts to the hypothetical:

"That upon investigation it was discovered that Alessandra's eye, *specifically the cornea of her eye, had sustained an abrasion* in the incident that I had mentioned to you earlier, without going into the medical details of it, do you have an opinion to a reasonable degree of physical certainty, based upon your engineering training and background, as to *whether the edge of the glass as described in the hypothetical was a proximate cause of an injury of the type known as corneal abrasion?*

"A Yes, I do.

"Q Could you tell us what your opinion was?

"A It was the cause of it. It was the proximate cause. The sharp edge had no business being there." (Emphasis added.)

Hence, plaintiff's own expert was testifying as to the proximate cause of plaintiff's corneal abrasion. This is precisely the same type of testimony by defendant which plaintiff objected to in the posttrial motion. Hence, the rebuttal testimony offered by the defense was clearly in response to the proof required in plaintiff's case. The jury should have been permitted to weigh the evidence and to have the verdict sustained *(Feder v Port of N. Y. Auth.,* 42 AD2d 602).

This type of testimony is not uncommon. Mechanical engineers are frequently called upon to testify and distinguish types of injuries as caused by different mechanical environments. In *Caiazzo v Volkswagenwerk, A. G.* (647 F2d 241, 248), the court held: "The witnesses on the design defect and causation issues for the Caiazzos were William Steiglitz, an accident reconstruction expert, and Dr. Norman Silver, the Caiazzos' treating physician. In addition to his testimony regarding the manner of ejection and the kinematic effects of the accident sequence, Steiglitz, in response to hypothetical questions, testified that the defects in the doors were substantial factors in causing the injuries sustained by the Caiazzos. The weight to be accorded to his testimony was within the

province of the jury to decide. *See e.g., Manning v. New York Telephone Co.,* 388 F.2d 910, 912 (2d Cir. 1968)."

There, as here, the weight of the expert evidence was a question for the jury *(see also, Spier v Barker,* 35 NY2d 444, 447-448). Consequently, the trial court should not have stricken defendant's expert's testimony.

Indeed, the weighing of the expert testimony was an integral part of the jury function in evaluating plaintiff's claim as well as Gimbel's defense. Gimbel's defense concentrated on showing that plaintiff never made a credible showing of the instrumentality which injured plaintiff. Absent a showing of the instrumentality, Gimbel's argued that plaintiff never made out a prima facie case in negligence. There was simply no determination of what standard of care Gimbel's failed to exercise in allegedly harming plaintiff. Since there was no credible proof as to the precise instrumentality, there was more than sufficient reason for the jury to find that Gimbel's was not negligent.

Firstly, plaintiff's own expert testified that plaintiff's injury could have been caused either by a beveled edge or an unfinished edge. Secondly, there was no proof as to the precise agent of plaintiff's injury. Plaintiff testified that she did not see what struck her eye. She said she covered one eye and merely groped her other hand around, which landed on a glass edge. Also, plaintiff's mother testified that other display cases had smooth edges. Moreover, while plaintiff's mother said she returned to the store and found sharp edges along the display case, she never tried to change the content of the accident report. Finally, plaintiff's own expert's testimony was seriously challenged on cross-examination.

Hence, under these circumstances, there is no sustainable basis for substituting the trial court's finding of fact for that of the jury *(see, Salazar v Fisher,* 147 AD2d 470). The jury's conclusion that Gimbel's was not negligent was based on a fair reflection of the evidence and testimony. Concur—Murphy, P. J., Carro, Rosenberger, Asch and Rubin, JJ.