Arthur **KRASNOPOLSKY** and Elaine Krasnopolsky, Plaintiffs,

v.

**WARNER–LAMBERT COMPANY,**
Defendant.

No. CV 88–3723 (ADS).

United States District Court,
E.D. New York.

July 13, 1992.

Arthur Krasnopolsky, pro se.
Elaine Krasnopolsky, pro se.

Lester Schwab Katz & Dwyer, New York City, Frederick H. Fern, of counsel, for defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The plaintiffs claim that Arthur Krasnopolsky's medically supervised ingestion of the drug Meclomen, an anti-inflammatory medication manufactured by the defendant Warner–Lambert Company, over a three-year period, caused him to suffer a kidney ailment known as "nephrotic syndrome". The plaintiffs seek damages from Warner–Lambert Company on theories of negligence, strict liability and breach of warranty.

The defendant Warner–Lambert Company now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing the Complaint.

## BACKGROUND

In October 1982, plaintiff Arthur Krasnopolsky visited the Veterans Administration's Ryerson Street Medical Clinic for treatment of pain in his left ankle. The treating physician, Dr. William McLaughlin, made a diagnosis of osteoarthritis. In December 1982, Dr. McLaughlin prescribed Meclomen, a non-steroidal anti-inflammatory drug available by prescription only and manufactured by the defendant Warner–Lambert Company ("Warner"), which Mr. Krasnopolsky ingested through December 1985. In January 1986, Mr. Krasnopolsky was diagnosed by another doctor, Dr. Donatelli, as suffering from nephrotic syndrome, a renal ailment which causes a spilling of protein into the urine. At the time he prescribed Meclomen to Mr. Krasnopolsky, Dr. McLaughlin did not inform him that kidney problems were a possible side effect of Meclomen.

The plaintiffs (collectively "the Krasnopolskys") contend that Mr. Krasnopolsky developed nephrotic syndrome as a result of his taking Meclomen. Mrs. Krasnopolsky seeks recovery for loss of the consortium of her husband. The Krasnopolskys allege that Warner was negligent in the manufacture, sale, distribution, research, warnings and investigation of Meclomen. They further allege that Warner is also liable under theories of breach of warranty and strict liability. With regard to their strict liability cause of action, the Krasnopolskys claim that Meclomen was "unreasonably dangerous" during the period Mr. Krasnopolsky used it.

## JURISDICTION

The Krasnopolskys are citizens of the State of New York. Warner Lambert is a Delaware corporation with its principal place of business in Morris Plains, New Jersey. The amount in controversy exceeds $50,000. Jurisdiction based upon diversity pursuant to 28 U.S.C. § 1332 is proper.

## PROCEDURAL SETTING

Warner moves for summary judgment dismissing the Complaint. Warner contends that under New York State law it cannot be liable under any claim of inadequate warnings due to the "learned intermediary" doctrine and the lack of any "failure to warn" as a proximate cause of the alleged injuries sustained by the plaintiffs. Specifically, Warner maintains that Dr. McLaughlin, as the "learned intermediary", was provided with adequate warnings through the Meclomen package insert, medical journals and other media. Warner also asserts that the Krasnopolskys have failed to provide any evidence to substantiate any of their other claims, which arise under negligence and breach of warranty theories.

In opposition to Warner's motion, the Krasnopolskys claim that the "learned intermediary" doctrine is not applicable in this case, as they contend that Dr. McLaughlin was not familiar enough with Mr. Krasnopolsky so as to constitute a "learned intermediary". They further contend that Dr. McLaughlin's treatment of Mr. Krasnopolsky was a "crap shoot". (Plaintiffs' brief at p. 10.) The Krasnopolskys also contend that the learned intermediary doctrine does not apply because the

warning Warner gave to Dr. McLaughlin was inadequate.

In support of their claim that Warner was negligent in the testing and investigation of Meclomen, the Krasnopolskys submit copies of the relevant pages of the Physicians Desk Reference ("PDR") from 1982 and 1985, which do not list nephrotic syndrome as a side effect of Meclomen. However, these PDR entries do list "renal failure" as one of Meclomen's side effects. The Krasnopolskys further submit copies of the relevant pages from the 1987 PDR, which does list nephrotic syndrome as a side effect. The Krasnopolskys did not submit any affidavits or other proof to support any of their other claims.

### THE LAW

#### (a) *Summary Judgment Standard*

Summary judgment shall be granted in favor of a party if it is demonstrated that there are no genuine issues of material fact for trial, and that the movant is entitled to judgment as a matter of law (*see* Fed.R.Civ.P. 56[c]; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*see Liscio v. Warren*, 901 F.2d 274, 276 [2d Cir.1990]; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]). Once a party moves for summary judgment, in order to avoid the granting of the motion, the nonmovant must come forward with specific facts showing that a genuine issue for trial exists (*see National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 [2d Cir.1989]). However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment (*see Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990]). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable (*see Rattner v. Netburn*, 930 F.2d 204 [2d Cir.

1991]). Finally, the Court is charged with the function of "issue finding", not "issue resolution" (*Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership*, 912 F.2d 23, 27 [2d Cir.1990]).

In opposing a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the averse party's response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If the adverse party does not so respond, summary judgment, if appropriate, *shall be entered against the adverse party*" (Fed.R.Civ.P. 56[e] [emphasis supplied]).

#### (b) *Failure to Warn—Pharmaceuticals*

With regard to the liability of drug manufacturers, "where the theory of liability is failure to warn, negligence and strict liability are equivalent." (*Fane v. Zimmer, Inc.*, 927 F.2d 124, 130 [2d Cir.1991].)

"[A] drug manufacturer, like any other manufacturer, can be held liable for a defective product under the theory of strict products liability. *Baker v. St. Agnes Hospital*, 70 App.Div.2d 400, 404, 421 N.Y.S.2d 81 (1979). Unlike most other products, however, ethical or prescription drugs may cause untoward side effects despite the fact that they have been carefully and properly manufactured. For purposes of strict products liability, these drugs, aptly described as '[u]navoidably unsafe products', are not deemed defective or unreasonably dangerous so long as they are accompanied by proper directions for use and adequate warnings as to potential side effects. *Wolfgruber v. Upjohn Co.*, 72 App.Div.2d 59, 61, 423 N.Y.S.2d 95 (1979) (citing Restatement (Second) of Torts § 402A, Comment k (1965))."

(*Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87 [2d Cir.1980].)

A manufacturer's duty is to warn of all potential dangers which it knew or in the exercise of reasonable care should have known to exist. (*Lindsay, supra* at p. 91.) This duty is a continuous one, and requires

that the manufacturer be aware of the current information concerning the safety of its product. (*Lindsay, supra* at p. 91.) "Except where FDA regulations otherwise provide, the manufacturer's duty is to warn the doctor, not the patient. The doctor acts as an 'informed intermediary' between the manufacturer and the patient, evaluating the patient's needs, assessing the risks and benefits of available drugs, prescribing one, and supervising its use." (*Lindsay, supra* at p. 91; *see also Fane, supra*, 927 F.2d at p. 129.) If the treating physician is sufficiently warned, the product is not defective. (*Fane, supra*, 927 F.2d at p. 129.)

▉ In bringing suit against a drug manufacturer based upon a failure to warn, "a plaintiff must demonstrate that the warning was inadequate and that the failure to adequately warn of the dangers of the drug was a proximate cause of his or her injuries." (*Glucksman v. Halsey Drug Co., Inc.*, 160 A.D.2d 305, 553 N.Y.S.2d 724, 726 [1st Dep't 1990].) The plaintiff has the burden of proving that a defect exists and that this defect is the proximate cause of the plaintiff's injury. (*Lindsay, supra*, 637 F.2d at p. 92.) A treating physician's decision not to inform a patient of a side effect acts as an intervening cause which shields the drug manufacturer from any possible liability under a failure to warn theory. (*Id.*)

## DISCUSSION

▉ As mentioned above, the Krasnopolskys cite several grounds upon which they allege Warner is liable for their injuries. However, in opposition to the instant motion, the Krasnopolskys argue only that the Complaint should not be dismissed on the "failure to warn" and negligent testing and investigation grounds. They failed to submit any evidence to support any of their other claims.

The Krasnopolskys contend that the learned intermediary doctrine should not apply in this case because Dr. McLaughlin examined Mr. Krasnopolsky in a clinical setting, where Dr. McLaughlin did not "attempt to become learned as to the particular susceptibilities of the patient." (Plain-

tiffs' Memorandum of Law at p. 9.) Thus, the Krasnopolskys claim that the "traditional physician-patient relationship envisioned by the learned intermediary doctrine" did not exist. (Plaintiffs' brief at p. 9.)

However, none of the cases cited by the Krasnopolskys support their contention that a physician's examination of a patient in a clinic does not establish a physician-patient relationship. Research reveals that, apparently, the only instances where the learned intermediary doctrine has been held inapplicable are when vaccines are used in mass immunization clinical programs, clearly not relevant in this case.

Furthermore, the learned intermediary doctrine is even applicable in some of these vaccine cases. In *Hurley v. Lederle Laboratories*, 863 F.2d 1173 (5th Cir.1988), cited by the Krasnopolskys, the plaintiffs contended that the vaccination took place in a clinical environment, "where a nurse administered the vaccine as a routine matter and the prescribing physician did not see the patient at the time of vaccination...." (*Id.* at 1178.) However, the Fifth Circuit held that the learned intermediary doctrine did apply:

> "... a physician-patient relationship existed and the doctor had assumed the rule of learned intermediary.... [S]ince the doctor assumed the burden of presiding over the patient's best interest, he, not the vaccine manufacturer, also assumed the corresponding duty to warn the patient. In other words, the vaccine manufacturer is not responsible for how the learned intermediary conducts his business."

(*Mazur v. Merck & Co.*, 767 F.Supp. 697, 711 [E.D.Pa.1991].)

In *Mazur*, the vaccine was administered by a school nurse. The Eastern District of Pennsylvania found, after examining her background, that the school nurse constituted a learned intermediary. Notably, the court held "Merck did not have to show that Nurse Frederick actually made an individualized medical judgment concerning Lisa's inoculation. It need only have shown that Nurse Frederick was a quali-

fied learned intermediary, that is, *capable* of making an individualized medical judgment, and was present at the time of her inoculation." (*Mazur, supra* at p. 711, n. 19 [emphasis in original].) "The requirement is not that [the intermediary] be the "*most* learned intermediary," just a "learned intermediary". (*Mazur, supra* at p. 711, n. 18. [emphasis in original.])

The Court finds that this exception to the applicability of the learned intermediary doctrine does not apply in this case. On the contrary, the above-cited language supports the application of this doctrine under the circumstances presented in this case. Dr. McLaughlin clearly assumed the burden of presiding over Mr. Krasnopolsky's medical interests, and the Krasnopolskys have not contended that Dr. McLaughlin was incapable of making an individualized medical judgment of Mr. Krasnopolsky's condition. In light of the applicable law, Dr. McLaughlin is clearly a "learned intermediary" as envisioned by the doctrine.

■ The Krasnopolskys also maintain that the learned intermediary doctrine does not apply because the warning given to Dr. McLaughlin was inadequate. In response to a summary judgment motion, a plaintiff must come forward with evidentiary facts which tend to show that the manufacturer's warnings were deficient. (*Eiser v. Feldman,* 123 A.D.2d 583, 507 N.Y.S.2d 386, 388 [1st Dep't 1986].) "[B]are allegations of inadequacy in those warnings are not sufficient to defeat a drug manufacturer's motion for summary judgment." (*Eiser, supra* 507 N.Y.S.2d at p. 388. *See also Cofnas v. Tomases,* 145 Misc.2d 807, 548 N.Y.S.2d 367, 368.) The Krasnopolskys have failed to submit any evidence showing that the warnings given to Dr. McLaughlin by Warner were inadequate. Their speculative and conclusory claims of possible inadequacies in the warning without any evidentiary backup does not create a genuine factual issue so as to preclude summary judgment.

■ Moreover, as a result of Dr. McLaughlin's statement at his deposition that he would not have otherwise acted even if the Meclomen warnings were differ-

ent, and Dr. McLaughlin's professional decision not to inform Mr. Krasnopolsky of the possibility that he might suffer renal disorder as a side effect of Meclomen, the Krasnopolskys are precluded from recovering from Warner on a "failure to warn" theory even if the warnings given to Dr. McLaughlin were inadequate. A plaintiff must demonstrate that the failure to adequately warn of the dangers of the drug was a proximate cause of his injuries. (*Glucksman v. Halsey Drug Co.,* 160 A.D.2d 305, 553 N.Y.S.2d 724 [1st Dep't 1990].) A treating physician's decision not to inform a patient of the risk of injury is an intervening cause, which severs any causal connection between the patient's injury and the manufacturer, (*Glucksman, supra* 553 N.Y.S.2d at p. 726), as is a physician's affirmative statement that he would have prescribed the drug even if adequately informed. (*Hoffman–Rattet v. Ortho Pharmaceutical Corp.,* 135 Misc.2d 750, 516 N.Y.S.2d 856, 861–62 [Sup.Ct. N.Y.Cty.1987] [citations omitted].) At his deposition, Dr. McLaughlin testified that he was fully aware of the possibility of adverse renal reactions ·as a side effect of Meclomen, (Affirmation of Frederick Fern, exh. D, p. 38), and that he would have nevertheless prescribed Meclomen for Mr. Krasnopolsky. (*Id.* at p. 40.) In light of these uncontested facts, any alleged inadequacy in the warning was not a proximate cause of the plaintiffs' injuries, as a matter of law.

The Krasnopolskys contend that Dr. McLaughlin's statement that he would have prescribed Meclomen had the warnings been different is self-serving and thus not credible. In the cases where little weight has been accorded to a treating physician's statement that he would have followed the same course of treatment had the warnings been different, the treating physician has been a defendant and the statements found to be self-serving. (*See Hoffman–Rattet,* 135 Misc.2d 750, 516 N.Y.S.2d 856, 861–62.) Dr. McLaughlin is not a defendant in this lawsuit, and the Krasnopolskys have not provided any reason why his deposition testimony should

not be credited. Moreover, even if the Court was to completely discount Dr. McLaughlin's testimony, his professional decision not to inform Mr. Krasnopolsky of the possibility of renal failure is itself an intervening cause relieving Warner of any possible liability, as a matter of law.

■ The Krasnopolskys also allege that Warner was negligent in the manufacture, sale, distribution, research, warnings and investigation of Meclomen. "In a negligence action the plaintiff must establish that a manufacturer failed to exercise reasonable care in making his product." (*Fane v. Zimmer*, 927 F.2d 124, 130–31 [2d Cir.1991].) Here, the Krasnopolskys have failed to set forth any facts which would support a finding of negligence on the part of Warner. Aside from submitting the PDR pages mentioned above, which are of little value as the 1982 and 1985 pages do mention renal failure as a possible side effect, the Krasnopolskys have not provided the Court with *any* evidence which would support a finding of negligence in any respect so as to defeat a motion for summary judgment. Notably, the Krasnopolskys have failed to submit any type of expert proof, in an affidavit or otherwise, which would establish any causation between Mr. Krasnopolsky's injury and the alleged negligence of Warner.

■ Moreover, pursuant to Rule 407 of the Federal Rules of Evidence, the PDR pages are not admissible, as they are being used to prove that subsequent remedial measures were taken by Warner. Rule 407 provides, in relevant part: "When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." The PDR pages here are being used to prove that Warner did further testing and/or investigation of Meclomen and determined that nephrotic syndrome was a possible side effect, after Mr. Krasnopolsky's treatment. In this Court's view, this type of proof is excluded under Rule 407.

Similarly, the Krasnopolskys have failed to submit any evidence in support of their breach of warranty claim.

In sum, the plaintiffs have failed to raise any genuine material issues of fact on any of their theories of recovery which would prevent a summary disposition of this action on the law.

## CONCLUSION

For the foregoing reasons, Warner's motion for summary judgment is granted, and the Complaint is dismissed in its entirety. The Clerk of the Court is hereby directed to close this case.