[841 NYS2d 282]

VICTORIA MULHALL et al., Respondents, v Jo A. HANNAFIN, M.D.,
et al., Defendants, and SMITH & NEPHEW, INC., Appellant.

First Department, August 30, 2007

## APPEARANCES OF COUNSEL

*Goodwin Procter LLP*, New York City (*Glenn S. Kerner, Diana M. Scharf* and *Josephine Liu* of counsel), for appellant.

*Asher & Associates, P.C.*, New York City (*Robert J. Poblete* of counsel), for respondents.

## OPINION OF THE COURT

SULLIVAN, J.

In this products liability action, plaintiff Victoria Mulhall is alleged to have developed inflammatory conditions known as adhesive capsulitis and synovitis after having arthroscopic shoulder surgery, during which a surgical device was implanted in her right shoulder. The device, known as Suretac, a Smith & Nephew product, is a bioabsorbable tack (in layman's terms, an absorbable thumbtack) designed to fix or stabilize the attachment of the labrum to the bone and to dissolve slowly within the body, in a manner similar to absorbable sutures. As explained in the record, as the body heals the Suretac slowly dissolves within the joint while continuing to hold the shoulder together, so that by the time the healing process is completed, all that remains in the shoulder is the labrum attached to the bone. The use of Suretac obviates the need for an additional procedure to remove the tack.

All of this plaintiff's claims against Smith & Nephew—design defect, manufacturing defect, breach of warranty, punitive damages, and negligence and strict liability to the extent they are premised on allegations of manufacturing or design defect—have been dismissed on a grant of summary judgment in the order on appeal, except for the failure-to-warn claim. As to the latter, Supreme Court, in denying summary judgment, found that Smith & Nephew had not made a sufficient showing of the adequacy of its warning to warrant summary judgment.

Mrs. Mulhall allegedly injured her shoulder in November 1998 while pulling a heavy box from an overhead shelf; she felt a "pop" in her right shoulder and immediately experienced "dead arm" symptoms. Diagnosed with a torn labrum, she underwent an arthroscopic procedure performed by defendant Hannafin at defendant Hospital for Special Surgery in February 1999, after which she made steady rehabilitative progress, encountering no

difficulties until some three months later, when she allegedly began to experience a loss of range of motion in her shoulder. An MRI revealed the existence of an acute localized reactive synovitis in the area of the Suretac. As a result, Dr. Hannafin performed another procedure in July 1999 for a "frozen" shoulder and Suretac-related synovitis. Mrs. Mulhall continues to complain of pain and commenced this action in August 2003 against Dr. Hannafin and the hospital, alleging medical malpractice and lack of informed consent, and against Smith & Nephew, alleging strict products liability and the other claims previously noted.

At the conclusion of discovery, Smith & Nephew moved for summary judgment dismissing the complaint against it, arguing that the "undisputed facts demonstrate that the Suretac in Mrs. Mulhall's shoulder, in all respects, functioned and performed properly and that Smith & Nephew issued appropriate warnings regarding possible adverse reactions, including the exact type of inflammatory response claimed by plaintiffs." In support of its motion, Smith & Nephew submitted a copy of the package insert accompanying every Suretac, which warned of the following "ADVERSE REACTIONS":

> "As with any bioabsorbable implant, there is a chance of an inflammatory response during the degradation period of the device. A transient inflammatory reaction has been observed in some patients during the second or third post-operative month. This reaction, which may be associated with polymer breakdown, appears to be self limiting or responds to non-steroidal anti-inflammatory medications in conjunction with physiotherapy. Additional complications are those seen with any method of internal fixation."

Dr. Hannafin testified that Suretac was the only fixation device she used to repair a labral separation, and that her criteria for selecting Suretac over other devices were that it had been used safely in her procedures since 1992, and that medical literature had documented its effectiveness without any side effects.

Plaintiffs' expert, whose identity has been redacted, was of the opinion that the Suretac package insert failed to give adequate warning of the severity of the adverse reaction that might occur from the implantation of Suretac in the manner recommended by Smith & Nephew, including the possibility that the

transient inflammation could in fact evolve into a permanent inflammatory reaction. He also stated that any postoperative synovitis might progress to adhesive capsulitis, significant scarring and a frozen shoulder, requiring manipulation and repeat surgical intervention.

As noted, the motion court dismissed all the claims against Smith & Nephew except for failure to warn, finding that while the motion was supported by a copy of the above-quoted package insert, it offered only excerpts of Dr. Hannafin's deposition testimony and not an "affidavit of an expert, much less one who is familiar with Suretac or its risks, or . . . [an] affidavit of anyone from the company." (2006 NY Slip Op 30209[U], at *3.) In that regard, the court noted "[t]here is no indication . . . that Dr. Hannafin . . . was aware that the risks associated with Suretac were other than fleeting" (*id.* at *6-7). We reverse.

To succeed on their failure-to-warn claim, plaintiffs were required to prove that the product did not contain adequate warnings and that the inadequacy of those warnings was the proximate cause of the injuries (*Glucksman v Halsey Drug Co.,* 160 AD2d 305, 307 [1990]). The manufacturer's duty, under New York law, is to warn the medical community, not the patient (*id.*) of the product's risk. The warning must provide sufficient information to that class of prescribing physicians "who may be expected to have the least knowledge and experience with the" product (*Martin v Hacker,* 83 NY2d 1, 9 [1993]).

Whether the cause of action for failure to warn is based on negligence or strict liability, the courts of this state have consistently held that a manufacturer's duty is to warn only of those dangers it knows of or are reasonably foreseeable (*see Rastelli v Goodyear Tire & Rubber Co.,* 79 NY2d 289, 297 [1992]). Knowledge, actual or constructive, of a danger inherent in a product is an essential factor in determining whether a manufacturer is liable (*see e.g. Goldberg v Union Hardware Co.,* 162 AD2d 658, 659 [1990]). The lack of such knowledge is fatal to a failure-to-warn claim, and in the absence thereof, summary judgment is warranted (*see Daley v McNeil Consumer Prods. Co., a Div. of McNeil-PPC, Inc.,* 164 F Supp 2d 367, 373 [SD NY 2001]).

As the record shows, the warning on Smith & Nephew's Suretac package insert reflected—and thereby conveyed to prescribing physicians—the most current knowledge available concerning the potential risks associated with the product, which is all that the law requires (*see Lindsay v Ortho Pharm. Corp.,* 637 F2d 87, 91 [2d Cir 1980]). In fact, as plaintiffs conceded, Smith

& Nephew changed its warning level in 1997, only two years before Mrs. Mulhall's surgery, in response to only six reports, at most, of transient inflammatory reactions, while selling between 10,000 and 20,000 Suretacs each year. Furthermore, as the record shows, Smith & Nephew did not receive any reports of adverse effects from the use of Suretac, other than the six reports that brought about the revised warning of 1997. Since the undisputed evidence showed that Smith & Nephew never received a single report associating the use of Suretac with the "permanent inflammatory reaction" claimed by plaintiffs, it had no duty to warn against such an injury (*see Kaempfe v Lehn & Fink Prods. Corp.*, 21 AD2d 197, 200 [1964], *affd* 20 NY2d 818 [1967] ["manufacturer or seller should not be held bound to anticipate and warn against a remote possibility of injury in an isolated and unusual case"]). The record fails to reveal anything even suggesting Smith & Nephew had any reason to know or appreciate that an injury of the type allegedly suffered here could have been a potential side effect of the use of Suretac.

Thus, Smith & Nephew, notwithstanding the motion court's views as to the lack of a supporting affidavit from an expert or one of its representatives, clearly established that its warnings were not deficient in any way. Its package insert speaks for itself, and its position is amply supported by the testimony of Dr. Hannafin and its record experience with the product.

Once Smith & Nephew met its threshold burden of showing it adequately warned prescribing physicians of all the known risks from using Suretac, the burden shifted to plaintiffs to create a material issue of fact by showing the warnings were deficient (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *see Krasnopolsky v Warner-Lambert Co.*, 799 F Supp 1342 [ED NY 1992]). Plaintiffs had to show Smith & Nephew had knowledge, either actual or constructive, that the type of injuries allegedly sustained by this patient could result from using Suretac, thereby creating a duty to warn.

Plaintiffs, proffering only the affirmation of their unidentified expert, who failed to make a single reference to either the record or any other source to support his conclusions, did not meet their burden. While the expert alluded to "numerous articles, studies and reports" that he claimed should have alerted Smith & Nephew to the risk complained of, he conspicuously failed to identify these publications or show that any were published before the 1999 surgery. Such purported authority cannot sup-

port an opinion that prior to the surgery, Smith & Nephew knew or should have known of information that was missing from its warning.

Nor, in this regard, did plaintiffs' expert identify a single article, study or report upon which he relied in reaching his opinion that the use of Suretac was a substantial factor in causing Mrs. Mulhall's injuries. The substance of any of the purported articles or how they might support the expert's conclusions is not discussed. This deficiency alone renders the opinion insufficient to create an issue of fact (*see Buchholz v Trump 767 Fifth Ave., LLC*, 5 NY3d 1, 8-9 [2005]).

Similarly, in expressing the view that Smith & Nephew should have warned of "the possibility that the 'transient' inflammatory reaction may in fact evolve into a permanent inflammatory reaction," the expert fails to indicate the basis for such a bold conclusion. Nowhere in the affirmation does the expert conclude that prior to 1999, Smith & Nephew knew or had reason to know that Suretac might cause these injuries. Absent any specific evidence demonstrating such knowledge that would give rise to a duty to warn, the expert's affirmation is entirely conclusory and insufficient to create an issue of fact (*see Schrader v Sunnyside Corp.*, 297 AD2d 369, 371 [2002], *lv denied* 100 NY2d 553 [2003] ["It is well settled that expert opinions that are conclusory or unsupported by the record are insufficient to raise triable issues of fact"]).

Unable to present any proof that Smith & Nephew knew or should have known that Suretac might cause the type of injuries Mrs. Mulhall is alleged to have sustained, plaintiffs argue that Smith & Nephew failed to set forth each and every action taken to assure that its product was safe. This argument, a familiar one often presented in other contexts but uniformly rejected, fares no better in this case. Essentially, this argument would shift the burden to Smith & Nephew to prove a negative. It is plaintiffs' burden to demonstrate that Smith & Nephew's warning was inadequate (*Andre v Mecta Corp.*, 186 AD2d 1, 2 [1992], *lv denied* 85 NY2d 801 [1995]), not Smith & Nephew's burden to show it was not.

Plaintiffs' case also fails because, as Smith & Nephew demonstrated on this motion, Mrs. Mulhall's injuries were not proximately caused by a failure to warn. Plaintiffs had the burden to show that had a different warning been given, this patient would not have used the product that caused her injury (*Glucksman,* 160 AD2d at 307; *see Krasnopolsky,* 799 F Supp at

1347 [plaintiff could not establish proximate cause when prescribing physician testified that a different warning would not have dissuaded him from prescribing the drug alleged to have caused plaintiff's injury]).

As the record shows, Smith & Nephew provided extensive and appropriate warnings to physicians. It showed that Suretac is a product used nationwide for the repair of labral separation, and was the only fixation device used by Dr. Hannafin for that purpose. As the doctor testified, she selected Suretac over all other available devices because she had used it safely in her practice since 1992 and the medical literature had documented that Suretac performed well without side effects.

In the face of such a showing, plaintiffs had to show that had the warning been different, Dr. Hannafin would have departed from her normal practice and used another device. Plaintiffs, however, failed to demonstrate that such would have been the case. Instead, their only response was to state that they do not consider Dr. Hannafin's opinions or decisions regarding Suretac relevant. They offered no evidence whatsoever that Dr. Hannafin might have used another product under different circumstances.

While under New York law it was Smith & Nephew's duty to provide adequate warnings to Dr. Hannafin as the learned intermediary, the result would have been no different even if Smith & Nephew were chargeable with warning plaintiff directly. Under well settled law, to prove proximate cause, a plaintiff has the obligation to adduce proof that had a warning been provided, she would have read the warning and heeded it (*Sosna v American Home Prods.*, 298 AD2d 158 [2002]). As the record shows, plaintiffs would not have complied with either condition. Mrs. Mulhall testified that she chose not to read the consent forms warning against the risks of loss of sensation, limb function, paralysis and even death, and signed them nonetheless. As she admitted, reading the forms would not have dissuaded her from undergoing the surgery because her arm was "killing" her and she "had made up [her] mind to have [the] surgery." As is apparent, even if plaintiffs had been warned as to the possibility of the exact injury that occurred here, the warning would have been futile. Thus, the record demonstrates that even if Smith & Nephew's duty to warn ran directly to this patient, her proof on the issue of proximate cause fails.

We have considered plaintiffs' other arguments and find them without merit.

Accordingly, the order of the Supreme Court, New York County (Stanley L. Sklar, J.), entered July 11, 2006, which denied the motion of defendant Smith & Nephew for summary judgment dismissing the claim for failure to warn, should be reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant Smith & Nephew dismissing the complaint as against it.

ANDRIAS, J.P., SAXE, GONZALEZ and McGUIRE, JJ., concur.

Order, Supreme Court, New York County, entered July 11, 2006, reversed, on the law, without costs or disbursements, and the motion of defendant Smith & Nephew, Inc. for summary judgment dismissing the claim for failure to warn granted. The Clerk is directed to enter judgment in favor of defendant Smith & Nephew, Inc. dismissing the complaint as against it.