■ LORRAINE M. COLAROSSI, Respondent, v C.R. BARD, INC., Appellant, and MICHAEL F. KERIN, M.D., Respondent, et al., Defendants. [978 NYS2d 148]—

Plaintiff's decedent was injured when a piece of a port/catheter manufactured by Bard and implanted in her chest broke off and traveled to her heart, where it became lodged. Defendant Michael F. Kerin implanted the port/catheter under the skin of the upper right side of the decedent's chest on November 5, 2007, to provide vascular access for chemotherapy, and the port/catheter was used to infuse the decedent with chemotherapy on two occasions. On January 7, 2008, after the decedent complained that she felt the port flipping, and a nurse observed that the area above the port was swollen or bulged and that fluid was collecting around the area of the port, Dr. Kerin removed the port/catheter.

Bard failed to establish the adequacy of its warnings and the lack of any causal connection between any warning inadequacy and the decedent's injuries (*see e.g. Mulhall v Hannafin*, 45 AD3d 55, 58 [1st Dept 2007]). Bard maintains that the catheter fractured due to compression or "pinch-off," also referred to as "kinking," a complication of which Bard warned in its instructions for use and Dr. Kerin admittedly was aware. However, Bard's assumption that pinch-off was the cause of the fracture and that Dr. Kerin was negligent in his placement of the port/catheter both is unsupported by any expert testimony and ignores the testimony of its own director of quality assurance identifying other possible causes of fracture, such as a flipping or rotating port, of which Dr. Kerin was unaware. Bard's reliance on a November 5, 2007 X-ray report is misplaced since Dr. Kerin testified that he viewed the underlying films and found that they did not reflect any pinching, and there is no evidence in the record that the degree of pinch-off allegedly reflected in those films or in subsequent diagnostic tests was sufficient to cause fracture or require intervention.

In light of the foregoing, we need not address the qualifications of plaintiff's electrical engineering expert to render an opinion on the adequacy of Bard's warnings and the potential of the catheter to fracture. Were we to reach this issue, we would find that the motion court properly considered the expert's

opinions, to the extent it accepted them, based upon his stated background, experience, and familiarity with Bard venous access ports such as the one at issue here (*see Melo v Morm Mgt. Co.*, 93 AD3d 499 [1st Dept 2012]; *Sumowicz v Gimbel Bros.*, 161 AD2d 314 [1st Dept 1990]).

The court erred in finding, sua sponte, after the note of issue had been filed, that Bard had a duty to warn anyone other than Dr. Kerin (*see Matter of Merritt v Rhea*, 107 AD3d 456 [1st Dept 2013]; *Lombardo v Mastec N. Am., Inc.*, 68 AD3d 935 [2d Dept 2009]). Plaintiff never pleaded or argued that the duty to warn extended beyond the prescribing surgeon, nor did her expert address such a theory in opposition to Bard's motion.

We have considered Bard's remaining arguments and find them unavailing. Concur—Sweeny, J.P., Acosta, Saxe, Moskowitz and Clark, JJ.