[831 NE2d 960, 798 NYS2d 715]

DEBORAH BUCHHOLZ, Individually and as Executrix of DOUGLAS BUCHHOLZ, Deceased, Appellant, v TRUMP 767 FIFTH AVE-NUE, LLC, Respondent.

Argued May 3, 2005; decided June 9, 2005

**POINTS OF COUNSEL**

*Kramer, Dillof, Livingston & Moore,* New York City (*Matthew Gaier* and *Norman Bard* of counsel), for appellant. I. Summary

judgment is improper because defendant failed to demonstrate the absence of issues of fact with respect to common-law negligence, proximate causation or a violation of the Building Code. (*Ugarriza v Schmieder,* 46 NY2d 471; *Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Giuffrida v Citibank Corp.,* 100 NY2d 72; *Lesocovich v 180 Madison Ave. Corp.,* 81 NY2d 982; *Alvarez v Prospect Hosp.,* 68 NY2d 320; *Zuckerman v City of New York,* 49 NY2d 557; *Friends of Animals v Associated Fur Mfrs.,* 46 NY2d 1065; *Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851; *Westmount Intl. Hotels v Sear-Brown Assoc.,* 65 NY2d 618; *Borough Hall-Oxford Tobacco Corp. v Central Off. Alarm Co.,* 35 AD2d 523.) II. The evidence submitted by plaintiff establishes issues of fact with respect to defendant's negligence at common law and causation, which require that defendant's motion be denied on the issue of common-law negligence. (*Kellman v 45 Tiemann Assoc.,* 87 NY2d 871; *McCummings v New York City Tr. Auth.,* 81 NY2d 923; *Atkins v Glens Falls City School Dist.,* 53 NY2d 325; *Ugarriza v Schmieder,* 46 NY2d 471; *Basso v Miller,* 40 NY2d 233; *Caldwell v Village of Island Park,* 304 NY 268; *Andre v Pomeroy,* 35 NY2d 361; *Gordon v City of New York,* 70 NY2d 839; *Danielenko v Kinney Rent A Car,* 57 NY2d 198; *Yahudah v Metro N. Riverview House,* 129 AD2d 429.) III. There are issues of fact as to whether defendant was negligent in failing to comply with New York City Administrative Code § 27-651. (*Pappalardo v New York Health & Racquet Club,* 279 AD2d 134; *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 41 NY2d 205; *Buchbinder, Tyunick & Co. v Tax Appeals Trib. of City of N.Y.,* 100 NY2d 389; *Matter of New York Yankees Partnership v O'Cleireacain,* 83 NY2d 550; *Matter of De Peyster,* 210 NY 216; *American Tr. Ins. Co. v Sartor,* 3 NY3d 71; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *People v Hedgeman,* 70 NY2d 533; *Price v Price,* 69 NY2d 8; *People v Ryan,* 274 NY 149.)

*Hoey, King, Toker & Epstein,* New York City (*H. Leonard Toker, Harold Kenneth King, Jr.,* and *Danielle M. Regan* of counsel), for respondent. I. The Appellate Division correctly held that New York City Administrative Code § 27-651, "Panels subject to human impact loads," which pertains to glass "in prime and storm doors, interior doors, fixed glass panels that may be mistaken for means of egress or ingress," did not apply to a 13th floor exterior window and that the lower court improperly allowed appellant's expert's conclusory opinion to usurp the court's function as the sole determiner of law. (*New York Yankees Partnership v O'Cleireacain,* 83 NY2d 550; *Rodri-*

*guez v New York City Hous. Auth.,* 209 AD2d 260; *Ross v Manhattan Chelsea Assoc.,* 194 AD2d 332; *Marquart v Yeshiva Machezikel Torah D'Chasidel Belz of N.Y.,* 53 AD2d 688; *Amatulli v Delhi Constr. Corp.,* 77 NY2d 525; *Diaz v New York Downtown Hosp.,* 99 NY2d 542; *Daubert v Merrell Dow Pharms., Inc.,* 509 US 579; *Pappalardo v New York Health & Racquet Club,* 279 AD2d 134.) II. The Appellate Division properly granted respondent's motion for summary judgment where appellant has offered no competent evidence that the 13th floor exterior window through which appellant's decedent was thrown was defective or a departure from good and accepted engineering and building safety practices. (*Pappalardo v New York Health & Racquet Club,* 279 AD2d 134; *Pena v Schur,* 245 AD2d 206; *Bradley v Smithtown Cent. School Dist.,* 265 AD2d 283; *Diaz v New York Downtown Hosp.,* 99 NY2d 542; *Amatulli v Delhi Constr. Corp.,* 77 NY2d 525.)

## OPINION OF THE COURT

READ, J.

The events precipitating this lawsuit took place on St. Patrick's Day, 1999. After lunching and watching the St. Patrick's Day Parade, decedent Douglas Buchholz and three coworkers returned to their employer's offices on the thirteenth floor of the full-block, 50-story General Motors tower at 767 Fifth Avenue in Manhattan. Decedent, who weighed over 200 pounds, and one of his three coworkers eventually got caught up in "play fighting." Shortly after 7:00 P.M., decedent was "pushed" and "fell through" the center panel of a three-panel bay window. He plunged to his death, landing on the roof of the building's three-story high showroom.[1]

The bay window's center panel measured 37 inches wide by roughly 88 inches high, was fitted with quarter-inch-thick non-tempered bronze plate glass, and was flanked by two 12-inch-wide by 88-inch-high side panels. The base of the bay window

---

1. Decedent's death was ruled a homicide by the Medical Examiner; no criminal charges were ever filed. There is no eyewitness account of the events immediately preceding decedent's death; the three coworkers refused to testify in this action. What we know derives principally from two Unusual Occurrence Reports prepared by the detective from the New York City Police Department who interviewed witnesses and investigated, as well as a Complaint Report form. These documents, from which the quotations in the text are taken, were completed in the early morning hours of March 18, 1999. The Complaint Report indicates the presence of "bottles [and] glasses" at the scene of decedent's fatal accident.

rested atop a 24-inch-deep convector cover, which was approximately 16 inches tall.[2]

The General Motors tower was erected in 1968 for its namesake automotive company; defendant Trump 767 Fifth Avenue, LLC acquired the building in 1998. The building's general manager since 1979 testified that he had no knowledge of "any problem with the [tower's] window glass," or of "any incidents . . . where glass popped out of windows or . . . slipped out of windows." Prior to March 1999 there had been "occasional damage to glass" causing it to crack, but this was a "very, very low level of concern." The building manager was not aware of "anybody breaking a glass from falling up against it" prior to March 1999, or of any other incident in his "many years in the building where glass . . . shattered" upon human impact.

When the building manager arrived at the scene of decedent's fatal accident at about 8:30 P.M., he saw shards of glass in the center window panel's frame; the side panels were undamaged. A sheetrock wall adjacent to the window was marred by "indentations" or "creases . . . where it was caved in." Because the frame of the center window panel was intact and undamaged, it was not removed or repaired when the glass was later replaced.

Plaintiff Deborah Buchholz, decedent's wife, commenced this action against defendant both individually and as executrix of decedent's estate. Plaintiff alleges that defendant was negligent in its ownership and control of the premises, leading to decedent's death. More specifically, plaintiff's bills of particulars claim that defendant neglected to furnish shatterproof glass windows and a safety rail across the window's face, and failed to comply with applicable regulations, including New York City Administrative Code § 27-651.

Following joinder of issue and discovery, defendant moved for summary judgment to dismiss the complaint, arguing that there was no evidence that defendant was negligent and that section 27-651 did not apply to the window. In opposition, plaintiff submitted the affidavit of her expert, a registered architect and licensed professional engineer, who inspected the scene of the accident on April 18, 2002.

Plaintiff's expert averred that the window's "very low sill" made it "highly susceptible to accidental human contact." He

---

2. This latter measurement was furnished by plaintiff's expert. According to defendant, the convector cover upon which the bay window's base rested was roughly 20 inches tall.

opined that the window was a "similar installation[ ]" under section 27-651 of the New York City Administrative Code "because the glass panel was highly susceptible to human impact loads as are the other installations in [this] code provision," which requires outfitting those glass panels subject to it with a pushbar or grille. Accordingly,

> "good and accepted engineering and building safety practices dictated that a protective barrier bar be installed between 34 to 38 inches above the floor capable of withstanding a horizontal load of 50 pounds per linear foot without contracting [sic] the glass and that the barrier be a minimum of 1-1/2 inches thick."

Plaintiff's expert opined that the failure to install this protective barrier violated section 27-651; departed from good and accepted engineering and building safety practices at the time the tower was built; was readily discoverable when defendant purchased the building and inspected the windows in 1998; and should have been remedied before decedent's accident.

Plaintiff's expert continued that the tower's "non-tempered glass was [also] hazardous because [this glass] is not resistant to horizontal human impact loads and is highly susceptible to shattering and breaking into sharp dangerous shards," and that defendant should have recognized this danger. Further, "good engineering and building safety practices dictated that all the windows with non-tempered glass should have been safeguarded with a protective bar." Plaintiff's expert concluded that decedent's death was "directly due to non-compliance with N.Y.C Building Code Section 27-651 and accepted engineering and building code practice." Specifically, "[i]f the glass was properly tempered and/or a protective bar introduced across the window, . . . this accident which resulted in decedent's death would have been avoided."

Supreme Court denied defendant's motion for summary judgment, stating that "[a]lthough . . . the window could not have been confused as a door or some other means of egress," she was "unable to determine, as a matter of law, whether the placement of the window sill created a situation where a person could easily stumble, and fall through the glass pane, necessitating the protections required by section 27-651 of the Administrative Code." Moreover, plaintiff's expert had "raised an issue of fact as to whether the construction/installation of the window was a serious deviation and departure from the standard and proper practice for office buildings in the City of New York."

The Appellate Division reversed, granted defendant's motion and dismissed the complaint. The Court concluded that as a matter of law section 27-651 does not apply to "exterior windows, whatever their location or dimensions" (4 AD3d 178, 178 [1st Dept 2004]). Further, the Court found that plaintiff's expert's testimony was conclusory and unsupported, and "since the question of the applicability of [section 27-651] is a purely legal one, the motion court should not have allowed the expert to usurp its function as the sole determiner of law" (4 AD3d at 179 [citations omitted]). We granted plaintiff leave to appeal, and now affirm.

New York City Administrative Code § 27-643 ("Scope") sets forth the scope of subchapter 10, article 12 ("Glass Panels") of the Building Code as follows:

> "The provisions of sections 27-644 through 27-648 of this article [12] shall apply to the use of glass in the exterior wall of a building and shall be limited to exterior application wherein the glass would not be subjected to any loads normal to the face of glass other than those due to wind. For applications involving human impact, the provisions of section 27-651 of this article shall apply. For other cases, the strength and mode of installation of glass shall conform to accepted industry standards."

Thus, exterior windows normally subject only to wind loads are covered by sections 27-644 through 27-648, while glass applications involving human impact are governed by section 27-651.

Section 27-651 ("Panels subject to human impact loads"), in turn, provides that,

> "[g]lass in prime and storm doors, interior doors, fixed glass panels that may be mistaken for means of egress or ingress, shower doors and tub enclosures, or in similar installations wherein one or more of the following criteria apply, shall meet the requirements set forth in table 10-9, or by comparative tests shall be proven to produce equivalent performance:
>
> "(a) openings are located in regularly occupied spaces.
>
> "(b) lowest point of panel is less than eighteen inches above finished floor.

"(c) minimum dimension of panel is larger than eighteen inches."

The portion of table 10-9 applicable to a glass panel of the type and dimension of the bay window's center panel (regular plate, over six square feet) specifies glass "[n]ot less than 3/16 in. thick" (as was the case here) and "protected by a push-bar or protective grille firmly attached on each exposed side, if not divided by a muntin" (as was not the case here). Thus, this appeal essentially reduces to whether the center window panel is a "similar installation[ ]" within the meaning of section 27-651 and thus subject to the specifications in table 10-9.

■ Plaintiff contends that the bay window's center panel is a "similar installation[ ]" because its size, configuration and location in regularly occupied space rendered it highly susceptible to accidental human contact. By its plain, very specific language, however, section 27-651 addresses only doors and door-like panels ("Glass in prime and storm *doors*, interior *doors*, fixed glass panels that may be *mistaken for means of egress or ingress*, shower *doors* and tub *enclosures*" [emphasis added]), which are pushed or pulled or are otherwise subject to human contact when someone tries to enter or exit through them. We therefore conclude that the term "similar installations" in section 27-651 encompasses only doors and door-like panels—not a fixed exterior window panel.

Based on her expert's opinion that the window was unsafe, plaintiff also argues that the Appellate Division erred in rejecting her common-law negligence claim. Plaintiff's expert opined that good and accepted engineering and building safety practices dictated installation of tempered glass in the window or, alternatively, a 1½-inch-thick protective barrier bar placed between 34 to 38 inches above the floor and capable of withstanding a horizontal load of 50 pounds per linear foot without contacting the glass. Further, plaintiff's expert opined that decedent's accidental death would have been averted "[i]f the glass was properly tempered and/or a protective bar introduced across the window."

■ This conclusory testimony was insufficient to raise a question of fact as to whether defendant breached its duty to "maintain[ ] [its] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk" (*Basso v Miller*, 40 NY2d 233, 241 [1976] [citation and internal quotation marks omitted]). Plaintiff's expert cited

no authority, treatise, standard, building code, article or other corroborating evidence to support his assertion that good and accepted engineering and building safety practices called for the installation of tempered glass in the General Motors building when it was erected in 1968, or for defendant to retrofit this 50-story tower's nontempered glass windows with bars after acquiring the building in 1998.

Plaintiff's expert cited only section 27-651 of the New York City Administrative Code—which we have held to be inapplicable as a matter of law—to support his opinion that protective barrier bars should have been installed across the face of the building's nontempered glass windows either in 1968 or after 1998. He provided no authority for his very particular specifications (i.e., thickness, height above the floor, horizontal load capacity) for such bars, or any basis for his view that tempered glass and/or a bar would have prevented decedent's accident, especially in light of the absence of any information about the height at which or the force with which decedent struck the bay window's center panel. "Where the expert's ultimate assertions are speculative or unsupported by any evidentiary foundation . . . the opinion should be given no probative force and is insufficient to withstand summary judgment" (*Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544 [2002]).

Here, the police reports indicate that decedent was pushed against and through the window as a consequence of rough "play fighting," and the Medical Examiner's report classifies the death as a homicide. Moreover, in the tower's roughly 31 years of occupancy prior to March 17, 1999, there were no remotely similar occurrences such as glass popping or slipping out of a window, or a window panel breaking when someone came into contact with it. In light of these circumstances, decedent's accident was not foreseeable as a matter of law (*see Tagle v Jakob*, 97 NY2d 165, 168 [2001]; *Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 344 [1928] ["(t)he risk reasonably to be perceived defines the duty to be obeyed"]). Concomitantly, the third-party act of pushing decedent into the window was sufficiently extraordinary to supersede any alleged negligence on defendant's part (*see Kush v City of Buffalo*, 59 NY2d 26, 33 [1983]; *see also Pena v Schur*, 245 AD2d 206, 207 [1st Dept 1997], *lv denied* 91 NY2d 811 [1998]; *Hyman v Queens County Bancorp, Inc.*, 3 NY3d 743 [2004] [holding that lack of second safety rail in bank was only speculatively the cause of plaintiff's injury]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur.

Order affirmed, with costs.