[808 NYS2d 214]

BLONDER & CO., INC., Appellant, v CITIBANK, N.A., Respondent.

First Department, January 31, 2006

## APPEARANCES OF COUNSEL

*Minogue Birnbaum LLP*, New York City (*George P. Birnbaum* and *Michael L. Ferch* of counsel), and *Franklin, Weinrib, Rudell & Vassallo*, New York City (*Jonathan Director* of counsel), for appellant.

*Zeichner Ellman & Krause LLP*, New York City (*Jantra Van Roy* and *Stephen F. Ellman* of counsel), for respondent.

## OPINION OF THE COURT

ANDRIAS, J.

A commercial letter of credit transaction involves three separate contractual relationships: the underlying contract for the purchase and sale of goods; the agreement between the issuer and its customer; and the letter of credit itself, in which the issuer undertakes to honor drafts or other demands for payment presented by the beneficiary or its transferee upon compliance with the terms and conditions specified in the letter of credit. The issuer's obligation to pay is fixed upon presentation of the drafts and the documents specified in the letter of credit. It deals in documents and is not required to resolve disputes or questions of fact concerning the underlying transaction (*see First Commercial Bank v Gotham Originals*, 64 NY2d 287, 294-295 [1985]).

In this action, plaintiff claims, inter alia, that defendant, the issuer, improperly paid a $540,225 letter of credit covering a shipment of nickel scrap from Nicaragua to the Netherlands. Plaintiff claims that the goods, which it and a joint venturer, Moav International, contracted to purchase, were never received in Rotterdam; that the supporting documents were fake; and that defendant failed to examine the documents presented with reasonable care so as to ensure that they were in substantial compliance with the terms and conditions of the letter of credit.

As pertinent to this appeal, the motion court granted defendant's motion to dismiss the complaint pursuant to CPLR

3211 (a) (1) on the basis of a defense founded upon documentary evidence or, in the alternative, for summary judgment pursuant to CPLR 3212, to the extent of dismissing plaintiff's first cause of action for wrongful honor on the basis of the letter of credit itself and the supporting documents presented to defendant. Examining such evidence, the court found that the supporting documents presented to defendant substantially complied with the terms of the letter of credit, in accordance with the Uniform Customs and Practice for Documentary Credits (UCP), a set of universally accepted rules on documentary credits established by the International Chamber of Commerce. The UCP, which is intended to make it easier for companies in different countries to trade with each other, has been used worldwide for more than 60 years and, by the terms of the letter of credit, specifically governs the transaction.

In order to prevail on a CPLR 3211 (a) (1) motion, the documents relied on must definitively dispose of plaintiff's claim (*Bronxville Knolls v Webster Town Ctr. Partnership*, 221 AD2d 248 [1995]). In this case, the motion court properly relied upon the unambiguous terms of the letter of credit, as amended, which specifically provided that it was subject to the UCP and, as to matters not addressed by the UCP, it was to be governed by and construed in accordance with New York law and applicable federal law.

A letter of credit is governed by the same general principles of law applying to all other written contracts, and it is fundamental that courts enforce contracts, not rewrite them. "[W]here the intention of the parties is clearly and unambiguously set forth in the agreement itself effect must be given to the intent as indicated by the language used without regard to extrinsic evidence" (*Schmidt v Magnetic Head Corp.*, 97 AD2d 151, 157 [1983] [citation omitted]) such as the opinion of plaintiff's expert.

Plaintiff does not question the motion court's action in deciding defendant's motion on the evidence before it, but contends that the court erred by substituting its own interpretation of what constitutes international standard banking practice for that of plaintiff's expert with 30 years' experience in the field. It claims that while international standard banking practice cannot contradict the UCP, the UCP does not exclude those items of custom and practice in international banking that are consistent with the UCP but not specifically spelled out therein. Plaintiff relies, for this proposition of law, on the opinion of its

document expert that, based upon "International Standard Banking Practice," such discrepancies were material and should have alerted defendant not to make payment on the letter of credit without first seeking a waiver of discrepancies from plaintiff. However, just as a court cannot impose upon the parties to a letter of credit any conditions not contained in the letter, neither can plaintiff do so in the guise of expert testimony.

The conclusory affidavit of plaintiff's expert, that in his 30 years of experience in the field he had never seen a bill of lading without a named consignee and that the document at issue "does not constitute a 'Bill of Lading' as that term is used in the International Standard Banking Practice," is insufficient to create an issue of fact as to whether such a usage of trade exists. The expert cited no authority, including the UCP, or any treatise, standard, article or other corroborating evidence to support his conclusory assertions (*see Buchholz v Trump 767 Fifth Ave., LLC,* 5 NY3d 1, 8-9 [2005]). While the existence and scope of such a usage ordinarily present factual issues, where such a usage is embodied in a trade code such as the UCP or other writing, "the interpretation of the writing is for the court" (UCC 1-205 [2]). Thus, any interpretation of the UCP was properly made by the motion court, which properly refused to allow the expert to usurp its function as the sole determiner of law (*see Buchholz v Trump 767 Fifth Ave.,* 4 AD3d 178, 179 [2004], *affd* 5 NY3d 1 [2005]).

As the motion court noted in its opinion, "[a]lthough plaintiff and its expert capitalize 'International Standard Banking Practice,' as if it were a separate document or agreement, it is not." The UCP requires that banks must examine documents "with reasonable care" in order to determine whether the documents "on their face" appear to comply with the letter of credit. As correctly found by the motion court,

> "[t]hat determination must be made in accordance with 'international standard banking practice *as reflected in these Articles*' (emphasis added by the motion court). Plaintiff's omission of that last phrase, its capitalization of the term, and plaintiff's insistence that the Bank 'fail[ed] to meet its initial burden' on its motion . . . because it did not submit evidence concerning 'International Standard Banking Practice,' demonstrate that plaintiff's argument is completely without merit."

In addition, opinions issued by the International Chamber of Commerce Banking Commission, the body that promulgated the

UCP, reject the notion that all of the documents should be exactly consistent in their wording. They state that a common-sense, case-by-case approach would permit minor deviations of a typographical nature because such a letter-for-letter correspondence between the letter of credit and the presentation documents is virtually impossible. The Banking Commission has also stated that "consistency," as that term is used in the UCP, means that the "whole of the documents must obviously relate to the same transaction, that is to say, that each should bear a relation (link) with the others on its face" (International Chamber of Commerce Banking Commission Publication No. 371, Decisions [1975-1979] of the ICC Banking Commission R. 12 [1980]). Moreover, as previously noted, and correctly found by the motion court, an issuing bank is not required to ascertain whether the documents are false or whether the goods were delivered, only that the documents substantially comply with the letter of credit on their face.

Obviously recognizing that defendant's examination was limited to the face of the documents presented, plaintiff, which claimed many other discrepancies in the documents at nisi prius, limits its appeal to claims that the required bill of lading was incomplete because it failed to name any consignee, that there was a discrepancy between the typed date on the bill of lading (January 11, 2000) and the "Clean on Board" stamp on the same document (January 11, 2001), and that there are two different ports of loading on the required inspection certificate.

Despite plaintiff's expert's opinion that the bill of lading was incomplete because it failed to name the consignee, there was no such requirement in the letter of credit, which merely required "1 copy of the bill of lading evidencing freight prepaid and shipment from Corinto Port, Nicaragua to Rotterdam, Netherlands." The motion court aptly noted that

> "[w]hether a consignee is named or not goes only to the issue of whether the bill of lading is negotiable or not, and the failure of a bill of lading to name a consignee does not, as plaintiff's expert suggests, make the bill of lading so defective that it is no longer even a bill of lading."

Likewise, as found by the motion court, the claimed discrepancy between the dates on the bill of lading ignores the "Clean On Board 11 ENE 2001" stamp on the bill of lading (ENE being the Spanish abbreviation for January). The typed date of "January 11, 2000" on the document, which is an understandably

common mistake at the beginning of a new year, not only predates the issuance of the letter of credit by more than 10 months but, as noted by defendant, loading on board may be indicated pursuant to UCP article 23 (a) (ii) by preprinted wording on the bill of lading or by a notation of the date on which the goods have been loaded on board. The "Clean on Board 11 ENE 2001" stamp clearly meets the UCP requirement.

Finally, on the second page of the preprinted inspection certificate, in the only place in the four-page document calling for the "Port of Loading," "Corinto Port, Nicaragua" is specifically so designated, as required by the terms of the letter of credit. Whether the "Location" referred to on the first page of the document as "Almacen General de Occidente S.A. Zona Franca, Carretera Leon, Nicaragua" reflects the name and address of the local company inspecting the goods or some other information is unclear and unexplained by the parties; nevertheless, there is no basis for any conjecture that it designates a different port of loading. As the motion court correctly found, the documents presented by the beneficiary substantially complied with the terms and conditions of the letter of credit.

Accordingly, the order of the Supreme Court, New York County (Richard B. Lowe, III, J.), entered December 17, 2002, which, inter alia, granted defendant's motion to dismiss plaintiff's first cause of action for wrongful honor, should be affirmed, without costs. The appeal from the order, same court and Justice, entered January 14, 2004, which denied plaintiff's motion for reargument and renewal for plaintiff's nonappearance, should be dismissed, without costs, as having been taken from a nonappealable order entered on default.

TOM, J.P. (dissenting). In connection with the purchase of nickel scrap from Corporacion Atlantic Calero, Ltd., plaintiff entered into an agreement with defendant for the issuance of an irrevocable letter of credit (reimbursement agreement), which provides that defendant will accept for payment a "document appearing on its face [to] . . . substantially comply with the terms and conditions of the Credit." The letter of credit issued by defendant, naming Corporacion Atlantic Calero as beneficiary, recites that it is subject to the provisions of the Uniform Customs and Practice for Documentary Credits (1993 Revision), International Chamber of Commerce Publication No. 500 (UCP), and is to be governed by the laws of the State of New York and applicable federal law.

On January 31, 2001, defendant notified plaintiff that pay-

ment documents had been presented and that its account would be debited in the amount of $541,625.56. Plaintiff, having reason to believe that the documents were forgeries, sent a fax to defendant to that effect, requesting that the bank stop payment. However, it appears that defendant had already honored the letter of credit and, on February 1, 2001, the bank debited plaintiff's account for the full amount. The first cause of action of the amended complaint alleges that defendant failed to examine the documents presented with reasonable care to ensure that they were in substantial compliance with the terms and conditions of the letter of credit.

Defendant moved pursuant to CPLR 3211 (a) (1) and (7) to dismiss the first cause of action for wrongful honor on the ground that the documents presented by the beneficiary for payment substantially complied with the letter of credit's terms and conditions.

In a lengthy decision, Supreme Court granted defendant's motion and dismissed the first cause of action. The court determined that the documents presented by the beneficiary were examined with reasonable care by defendant and that they substantially complied with the terms and conditions of the letter of credit. The court reviewed each of the claimed discrepancies and decided, contrary to the opinion of plaintiff's expert, that none was sufficiently material so as to require defendant to decline payment until a waiver was obtained from plaintiff.

On an application denominated a motion to renew and reargue (CPLR 2221 [d] [1]; [e] [1]), plaintiff submitted documents obtained during discovery conducted by the parties while the dismissal motion was pending. Included were e-mail communications from defendant's employees stating that payment was made "in error" and "due to our error," that defendant attempted to obtain repayment of the funds and that it was aware that plaintiff's joint venturer, Moav International, was the intended consignee of the cargo. In opposition, defendant asserted that the e-mail communications reflected only the bank's attempt to recall the funds as a courtesy to an established customer. In any event, the court denied the motion for nonappearance of plaintiff's counsel, which plaintiff alleges was due to counsel's failure to receive notice of the date of oral argument. Although the parties stipulated to place the reargument motion back on the court's calendar, it was never restored, and plaintiff subsequently perfected appeals from both the order dismissing its first cause of action and the order denying renewal and reargument.

There is no direct appeal from an order entered on default in appearance (*Matter of Hurst v Hurst*, 227 AD2d 689 [1996]). The proper procedure for seeking relief from a disposition rendered on default is to move to vacate the default and restore the matter to the calendar; appeal is then available should the motion to restore be denied (*id.*).

The test on a pre-answer motion to dismiss a complaint for failure to state a cause of action (CPLR 3211 [a] [7]) is whether a recognizable cause of action can be discerned from the four corners of the complaint, not whether a claim has been properly stated (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 634, 636 [1976]; *Dulberg v Mock*, 1 NY2d 54, 56 [1956]; *Hirschhorn v Hirschhorn*, 194 AD2d 768 [1993]). Plaintiff has clearly set forth a cognizable cause of action for wrongful honor. The pleadings allege that the documents presented to the bank contained material discrepancies which should have alerted defendant not to make payment. In opposition to defendant's motion to dismiss, plaintiff submitted the affidavit of an expert in the field, who opined that "the documents did not 'substantially comply' with the letter of credit at issue as that term is used in the UCP and in International Standard Banking Practice." The expert identified in detail various discrepancies in the documents and concluded that these discrepancies should have caused defendant to refuse payment or at least seek waivers of the discrepancies from plaintiff before releasing the funds.

To warrant dismissal, the documentary evidence must clearly negate an essential element of the cause of action. For example, in *Kliebert v McKoan* (228 AD2d 232 [1996], *lv denied* 89 NY2d 802 [1996]), this Court found that the record of the criminal action against the plaintiff clearly demonstrated that the defendant was justified in making a report to the district attorney, thereby defeating the presumed veracity of the factual allegations of malicious prosecution. Similarly, in *Greenwich v Markhoff* (234 AD2d 112, 114 [1996]), we dismissed a malpractice claim against the plaintiff's original counsel where documentary evidence clearly established that the firm had been discharged two years before the statute of limitations expired and, thus, could not be held liable for the lapse of the plaintiff's personal injury claim.

In the instant matter, the documentary evidence fails to clearly negate any essential element of plaintiff's first cause of action. The reimbursement agreement provides that defendant is to make payment only if the documents presented are in

"substantial compliance" with the terms and conditions of the letter of credit. As noted, plaintiff's expert has opined, based on his years of experience, that "the documents did not 'substantially comply' with the letter of credit" and that the material discrepancies in the documents should have alerted defendant not to make payment without seeking a waiver from plaintiff.

The motion court's decision indicates only that, upon a probing analysis on the merits, the court was persuaded that the evidence adduced thus far is insufficient to support judgment in favor of plaintiff. This, however, is not the test established by the Court of Appeals in *Rovello* (40 NY2d 633 [1976]), which warrants dismissal only if the complaint fails to set forth a cognizable claim on its face (*see* Siegel, NY Prac § 265, at 395 [2d ed]). As the Court of Appeals stated, "a complaint should not be dismissed on a pleading motion so long as, when the plaintiff is given the benefit of every possible favorable inference, a cause of action exists" (*Rovello*, 40 NY2d at 634). Here, Supreme Court, rather than deciding whether the pleadings sufficiently set forth a cognizable claim pursuant to CPLR 3211 (a) (7), instead drew all factual inferences in favor of defendant—in particular, resolving questions concerning the bank's duties under international standard banking practice as a matter of law—to render judgment on the merits in favor of defendant. The court's disposition is unsupportable, even in the absence of material questions of fact. As *Rovello* cautions, "Although absent further evidence, the dispute may be finally resolved on the more embracive and exploratory motion for summary judgment, disposition by summary dismissal under CPLR 3211 (subd [a], par 7), is premature" (*id.*).

Although a plaintiff in opposition to a pre-answer motion to dismiss is not required to submit evidentiary material, and any affidavits received "are not to be examined for the purpose of determining whether there is evidentiary support for the pleading[,] . . . affidavits may be used freely to preserve inartfully pleaded, but potentially meritorious, claims" (*id.* at 635; *see also AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582 [2005] [expert affidavits used to defeat motion to dismiss claim]).

On the instant motion, plaintiff submitted the affidavit of an expert who concluded that defendant failed to review the documents tendered by the beneficiary for payment in accordance with accepted international standard banking practices. He noted that the failure to designate a consignee was unique in

his 30 years of experience, stating, "Without a consignee, a bill of lading is incomplete because it lacks . . . 'evidence of title.' " He found numerous deficiencies in the documents tendered by the beneficiary, particularly in the bill of lading, including conflicting ports of loading on the shipping documents and anomalies in the weight of the shipping containers in the certificate of weighing, sampling and assay, that "plainly required Citibank to refuse payment on the Letter of Credit on the ground of substantial noncompliance." This conclusion is uncontroverted by any opposing expert opinion offered by defendant. Thus, even if the complaint can be regarded as facially insufficient, which it is not, the expert's affidavit supports a "potentially meritorious" claim sufficient to defeat defendant's dismissal motion (*Rovello*, 40 NY2d at 635).

Even if this matter were to be determined by reference to the criteria governing "the more embracive and exploratory motion for summary judgment" under CPLR 3212 (*id.* at 634), which the motion court explicitly states it did not, summary disposition is still unavailable. The ultimate issue to be decided in this case is inherently factual: whether defendant bank fulfilled its duty, as imposed by the parties' reimbursement agreement and the UCP, to examine the documents presented for payment "with reasonable care" and "in conformity with . . . letter of credit practices." While a court may take judicial notice of statutes and regulations (CPLR 4511), it may not apply its own knowledge to decide matters requiring expert testimony. A court is only permitted to take judicial notice of matters

> "of common and general knowledge, well established and authoritatively settled, not doubtful or uncertain. The test is whether sufficient notoriety attaches to the fact to make it proper to assume its existence without proof. If there is any doubt either as to the fact itself or as to its being a matter of common knowledge, evidence will be required" (*Ecco High Frequency Corp. v Amtorg Trading Corp.*, 81 NYS2d 610, 617 [1948], *affd* 274 App Div 982 [1948]).

Contrary to these settled rules, Supreme Court decided this controversy by applying its own belief or understanding of what constitutes accepted international banking practice to find that, pursuant to the parties' reimbursement agreement, the bank properly accepted the proffered documents as conforming to the conditions of the letter of credit. However, where a question of

fact is raised with respect to the existence or extent of a usage of trade, summary dismissal is inappropriate, whether sought at the pre-answer stage (*see AG Capital Funding Partners*, 5 NY3d 582 [2005]) or on summary judgment (*see Automation Source Corp. v Korea Exch. Bank*, 249 AD2d 1, 3 [1998] [letter of credit]).

Even when evaluated under the broader criteria of a motion for summary judgment (CPLR 3212), the record raises numerous questions of fact relating to whether defendant conducted a competent review of the documents presented for payment. The certificate of weighing, sampling and assay, in particular, contains some glaring inconsistencies. Anomalously, it asserts that "[w]eighing was carried out under our constant supervision on 100% of the cargo chosen at random." The first page of the four-page document states:

> "PACKING: The nickel scrap will be stuffed, bulk, into 20 foot seagoing containers. The gross weight of each container, including the tare weight, will not exceed 20,000 kgs.
>
> "LOADED TO THE VESSEL: M/S Tophas - Voyage No. 0048
>
> "LOCATION: Almacen General de Occidente S.A. Zona Franca, Carretera Leon, Nicaragua."

The second page, by contrast, identifies the "port of loading" as "Corinto Port, Nicaragua." Plaintiff's expert explained, "Something is clearly amiss and should have been flagged as a discrepancy. Either the load port has been stated incorrectly on one of the locations in the inspection certificate or the goods were moved in a manner inconsistent with any of the transaction documents." The weight of the cargo is stated to have been determined "over weighscale by weighing loaded." Incredibly, each of the nine containers into which the nickel scrap had been loaded tipped the scales at precisely 44,100 pounds (20,000 kilograms). The complaint also identifies several facial irregularities in the certificate, asserting that its "sloppy appearance, mangled language" and "poorly drawn logo" should have resulted in its rejection by defendant. Plaintiff's expert concluded that all such discrepancies constitute grounds for dishonor of the letter of credit. Even if the materiality of the discrepancies had been disputed by opposing expert testimony, which it was not, these irregularities merely present questions of fact. The motion court's resolution of the factual issues on its

own knowledge is clearly improper, and the disposition is unsupportable even on summary judgment grounds (CPLR 3212).

Accordingly, so much of the order as granted defendant's motion to dismiss the first cause of action for wrongful honor should be reversed, the motion denied and the first cause of action reinstated.

SAXE, MARLOW and NARDELLI, JJ., concur with ANDRIAS, J.; TOM, J.P., dissents in a separate opinion.

Order, Supreme Court, New York County, entered December 17, 2002, affirmed, without costs. Appeal from order, same court, entered January 14, 2004, dismissed, without costs.