[820 NYS2d 588]

Banco Nacional De México, S.A., Integrante Del Grupo Financiero Banamex, Appellant-Respondent, v Societe Generale, Respondent-Appellant.

First Department, September 19, 2006

## APPEARANCES OF COUNSEL

*Cleary Gottlieb Steen & Hamilton LLP*, New York City (*Jonathan I. Blackman* and *Lisa M. Colone* of counsel), for appellant-respondent.

*Quinn Emanuel Urquhart Oliver & Hedges, LLP*, New York City (*Marc L. Greenwald* and *William B. Adams* of counsel), for respondent-appellant.

*Moses & Singer LLP*, New York City (*Michael Evan Avidon* and *David Rabinowitz* of counsel), for the Clearing House Association L.L.C., amicus curiae.

## OPINION OF THE COURT

CATTERSON, J.

Plaintiff Banco Nacional De México, S.A., Integrante Del Grupo Financiero Banamex (hereinafter referred to as Banco Nacional) commenced this action seeking reimbursement for payments made to the beneficiary of a letter of credit. The letter of credit (hereinafter referred to as the Letter) was issued on December 10, 2002, in connection with the construction of a power plant in Mexico. It was issued at the request of nonpar-

ties Alstom Power and Rosarito Power (hereinafter referred to as Alstom and Rosarito) in favor of the Comision Federal de Electricidad (hereinafter referred to as CFE) up to an amount of $36,812,687.68. The issuing bank was Societe Generale (hereinafter referred to as SG), a French bank doing business in New York, which subsequently requested Banco Nacional to be the confirming bank.

The parties to the Letter agreed that it was to be governed by the UCP.[1] Further, despite the fact that the agreement was executed in Mexico and involved Mexican parties, they agreed that where there was no contradiction with the UCP, the Letter was to be governed and interpreted under New York law. The Letter additionally provided that "any dispute arising herefrom shall be resolved exclusively before the courts of the United States of America with seat in Manhattan, New York City, State of New York."[2]

The Letter also provided that CFE had the right to demand from the issuing bank, SG, partial payments or full payment "upon presentation of a signed written request . . . specifying the amount of the request for payment and . . . that at that time the commission [CFE] has a right to receive such payment from the companies [Alstom and Rosarito] pursuant to the provisions of the agreement." The Letter further provided that if a request for payment did not comply with its terms and conditions, SG must immediately notify CFE in writing.

On September 1, 2004, CFE hand-delivered a signed written request for payment to plaintiff Banco Nacional pursuant to the terms of the Letter. The request demanded the full amount obligated under the Letter. The payment demand strictly conformed to the terms of the Letter.

Subsequently, Banco Nacional informed defendant SG of CFE's conforming payment demand and provided supporting documentation and a reimbursement request indicating the complete amount to be paid to Banco Nacional.

On September 3, 2004, SG informed Banco Nacional that Alstom and Rosarito had questioned CFE's right to payment on

---

**1.** The Uniform Customs and Practice for Documentary Credits (UCP) is a compilation of internationally accepted commercial practices issued by the International Chamber of Commerce. "Although it is not law, the UCP applies to most letters of credit . . . because issuers generally incorporate it into their credits" (see *Alaska Textile Co., Inc. v Chase Manhattan Bank, N.A.*, 982 F2d 813, 816 [2d Cir 1992]).

**2.** This wording is from the English language translation of the Letter.

the grounds that no final arbitration award had been rendered against them. Within days, Alstom and Rosarito commenced an action against CFE in two Mexican courts and obtained ex parte Mexican orders purporting to stay payment on the Letter pursuant to the application of Mexican law. The first order was a provisional order to stay, which specifically stated that the stay was not based on the merits. The second order was also a provisional order to stay, which subsequently was revoked on appeal. Based on the two Mexican court orders, Alstom and Rosarito maintained that CFE was not entitled to payment under the agreement.

Banco Nacional responded that pursuant to the law governing the Letter, the UCP and the laws of the State of New York, disputes between parties to the agreement are irrelevant to the bank payment obligations under the Letter.

On September 8, 2004, Banco Nacional paid CFE the full amount obligated under the Letter, and immediately requested reimbursement from defendant. SG refused to reimburse plaintiff on the grounds that the Mexican orders excused it from payment.

Banco Nacional commenced this action seeking reimbursement plus interest. SG asserted that the Mexican injunctions prevented it from paying any party under the Letter. Subsequently, plaintiff moved for summary judgment on the grounds that payment was required under the terms of the Letter and that the orders of the Mexican courts did not constitute a proper basis for refusal of payment. SG opposed, arguing that plaintiff was aware that CFE had no right to demand payment and therefore the payment was fraudulent.

The motion court rejected SG's claim of fraud, and held that SG would have had to comply with the Letter and would have been required to reimburse Banco Nacional if not for the doctrine of comity which required the court to honor the injunctions of the Mexican courts since the place of performance of the Letter was Mexico. The court thus denied plaintiff's motion for summary judgment. For the reasons set forth below, we reverse, and grant summary judgment to plaintiff, and order defendant to reimburse plaintiff with interest.

The motion court erred in invoking the doctrine of comity. It is true that under certain circumstances, the doctrine of comity requires New York courts to honor foreign judgments. (*See Lasry v Lasry*, 180 AD2d 488 [1st Dept 1992].) However, there is no such requirement in the instant case.

At the heart of this action lies a commercial letter of credit transaction. The transaction in the instant case involves, as do all letter of credit transactions, three separate contractual relationships. (*See Blonder & Co., Inc. v Citibank, N.A.*, 28 AD3d 180, 181 [2006].) In *Blonder*, this Court itemized the three relationships as: the underlying contract for the purchase and sale of goods or services; the agreement between the issuer, usually a bank, and its customer, the applicant for the letter of credit; and the letter of credit itself in which the issuer/bank undertakes to honor drafts presented by the beneficiary upon compliance with the terms and conditions specified in the letter of credit. (*Id.* at 181.)

The fundamental principle governing letters of credit, as reflected in the UCP, and long-recognized by New York courts, is the doctrine of independent contracts. The Court of Appeals has explained the doctrine thus:

> "[T]he issuing bank's obligation to honor drafts drawn on a letter of credit by the beneficiary is separate and independent from any obligation of its customer to the beneficiary under the sale of goods contract and separate as well from any obligation of the issuer to its customer under their agreement." (*First Commercial Bank v Gotham Originals*, 64 NY2d 287, 294 [1985]; *see also Gillman v Chase Manhattan Bank*, 73 NY2d 1, 12-13 [1988]; *Nissho Iwai Europe v Korea First Bank*, 99 NY2d 115, 120 [2002]; *3Com Corp. v Banco do Brasil, S.A.*, 171 F3d 739, 741-744 [2d Cir 1999].)

In November 2000, this independence principle was codified in a general revision of article 5 ("Letters of Credit") of the Uniform Commercial Code. UCC 5-103 (d) now provides that:

> "[r]ights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary."

In other words, the "letter of credit" prong of any commercial transaction concerns the documents themselves and is not dependent on the resolution of disputes or questions of fact concerning the underlying transaction. (*Blonder & Co., Inc. v*

*Citibank, N.A.*, 28 AD3d at 181, citing *First Commercial Bank v Gotham Originals*, 64 NY2d at 294-295.)

In the instant case, the contractual relationships are comprised as follows: the underlying contract was made between Alstom/Rosarito and CFE; the issuer of the Letter was SG, whose customers are Alstom/Rosarito; and the letter of credit is an undertaking by SG to honor any drafts presented by CFE according to the terms of the Letter. Further, the dispute here is between banks. SG is the bank which issued the Letter, and Banco Nacional confirmed it, which created a relationship separate and independent of the underlying transaction in Mexico between CFE, the beneficiary, and Alstom and Rosarito, the applicants for SG's letter of credit.

Consequently, based on the doctrine of independent contract, SG's obligation to honor Banco Nacional's presentation to SG is dependent only on the validity of the presentation which the Letter subjects exclusively to New York law and the New York forum.

Indeed, the motion court properly observed that pursuant to the UCP and under New York law, SG "must honor a demand for payment which complies with the terms of the [Letter] regardless of whether there is a contract dispute." The court further properly found that payment on the Letter was not conditioned on any "arbitral award" and that the written request for payment under the Letter delivered to plaintiff strictly conformed to the terms of the Letter. Further, the court observed that there is no evidence in the record to suggest that defendant ever notified plaintiff or CFE in writing of any discrepancy between the payment demand and the Letter. Nor did it return the presented documents, or claim nonconformities. Defendant simply questioned CFE's underlying right to the funds, which was not a statement by defendant that the payment demand failed to conform to the documentary conditions of the Letter. The court consequently found that all conditions to payment on the Letter were satisfied under New York law.

However, even while acknowledging that the Letter contained the exclusive choice of New York law and forum clauses, the court conducted a "place of performance" analysis and erroneously determined that, in this case, the doctrine of comity supersedes that of independent contract. The court reasoned that because the performance of the Letter, that is, "presenting the demand and then Request, the issuance of the Confirmation, [and] the Notice by SG," all took place in Mexico

City, the doctrine of comity applied and therefore the injunctions of the Mexican courts staying payment on the Letter "must" be recognized. This was error.

The motion court ignored the provision of revised UCC 5-116 (a) that states that "[t]he jursidiction whose law is chosen [to govern the letter of credit] need not bear any relation to the transaction." This provision requires application of New York substantive letter of credit law when the parties choose it, regardless of any relationship or lack thereof with New York State. (*Blonder & Co., Inc. v Citibank, N.A.*, 28 AD3d at 182.)

Section 5-116 became effective when article 5 was revised in 2000, so that it conformed to international trade practice. The section replaced former UCC 1-105 (1) which required a "reasonable relation" between New York and the letter of credit for New York law to apply. A "contacts" and "place of performance" analysis, therefore, is neither necessary nor permissible under UCC 5-116. Thus, even though the Mexican courts may have jurisdiction of the underlying transaction under the "contacts" and the "place of performance" analysis, their injunctions have no bearing on the letter of credit.

On appeal, SG argues, nevertheless, that the change in the law resulting from the enactment of UCC 5-116 (a) did not alter the principles of comity or preclude New York courts from recognizing foreign orders in the letter of credit context. SG relies on *Fleet Natl. Bank, N.A. v Liag Argentina, S.A.* (4 Misc 3d 1025[A], 2004 NY Slip Op 51050[U] [Sup Ct, NY County 2004]) to support its position that New York courts have continued to apply the doctrine of comity to determine whether to recognize foreign orders relating to letters of credit. However, such reliance is misplaced because the promissory note in *Fleet* permitted the holder to choose *either* the law and courts of New York *or* the law and courts of Argentina. There was no explicit choice of law clause in *Fleet*. Here, by contrast, there was an explicit choice of law clause that established New York law as the exclusive governing law and forum. Moreover, as plaintiff correctly asserts, public policy considerations favor enforcing explicit choice of New York law clauses in letter of credit agreements. As a primary financial center and a clearinghouse of international transactions, the State of New York has a strong interest in maintaining its preeminent financial position and in protecting the justifiable expectation of the parties who choose New York law as the governing law of a letter of credit. (*J. Zeevi & Sons v Grindlays Bank [Uganda]*, 37 NY2d 220, 227 [1975],

*cert denied* 423 US 866 [1975].) The doctrine of independent contract, as codified in UCC article 5, allows the letter of credit to provide " 'a quick, economic and trustworthy means of financing transactions for parties not willing to deal on open accounts.' " (*Mennen v J.P. Morgan & Co.*, 91 NY2d 13, 21 [1997], quoting *All Serv. Exportacao, Importacao Comercio, S.A. v Banco Bamerindus Do Brazil, S.A., N.Y. Branch*, 921 F2d 32, 36 [2d Cir 1990].) Indeed, the utility of the letter of credit rests heavily on strict adherence to the agreed terms and the doctrine of independent contract. (*First Commercial Bank v Gotham Originals*, 64 NY2d at 298.)

In any event, even under the traditional comity analysis, there is no basis for the motion court to recognize the Mexican injunctions because they are nonfinal, ex parte orders of Mexican courts. CPLR 5302 permits recognition of foreign judgments under certain circumstances if they are final, conclusive and enforceable where rendered. This Court has consistently held that although the decision whether to extend comity is a matter of discretion, it is normally not extended by New York courts to nonfinal, nonmerit orders. (*See Matter of Johnson*, 142 Misc 2d 388, 391-392 [Sur Ct, NY County 1988], *affd* 145 AD2d 388 [1st Dept 1988]; *see also LBS Bank-N.Y. v Yutex, Inc.*, 283 AD2d 281 [1st Dept 2001].)

■ On its cross appeal, defendant further argues that the motion court erred in failing to find the existence of a triable issue of fact relating to Banco National's good faith in paying on the Letter. However, SG cannot merely assert a lack of "good faith" as a collateral attack on reimbursement of a confirming bank. Good faith is relevant only after an issuing bank has established a valid claim of fraud.

UCC 5-109 (a) provides in relevant part that:

> "[i]f a presentation is made that appears on its face strictly to comply with the terms and conditions of the letter of credit, but a required document is forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant:
>
> "(1) The issuer shall honor the presentation, if honor is demanded by . . .
>
> "(ii) a confirmer who has honored its confirmation in good faith."

Thus, an issuing bank must first establish that a presentation is fraudulent and only then does the burden shift to the confirming or negotiating bank to show that it paid in good faith. (*Bank of Canton, Ltd. v Republic Natl. Bank of N.Y.*, 509 F Supp 1310, 1317-1319 [SD NY 1980], *affd* 636 F2d 30 [2d Cir 1980].)

In the instant case, defendant raised the question of Banco Nacional's good faith but did not allege, let alone raise an issue of fact as to a fraud-in-the-transaction defense.

Accordingly, the order of the Supreme Court, New York County (Richard B. Lowe, III, J.), entered October 27, 2005, to the extent it denied plaintiff Banco Nacional De México, S.A., Integrante Del Grupo Financiero Banamex's motion for summary judgment, should be reversed, on the law, without costs, the motion granted, and defendant Societe Generale is ordered to reimburse the plaintiff with interest. The Clerk is directed to enter judgment in favor of plaintiff against defendant in the amount of $36,812,687.68, with statutory interest from September 8, 2004.

NARDELLI, J.P., WILLIAMS, McGUIRE and MALONE, JJ., concur.

Order, Supreme Court, New York County, entered October 27, 2005, reversed, on the law, without costs, plaintiff's motion for summary judgment granted, and defendant Societe Generale ordered to reimburse plaintiff, with interest. The Clerk is directed to enter judgment in favor of plaintiff, as indicated.