(October 21, 2008)

■ CHRISTOPHER HOTALING et al., Respondents-Appellants, v CITY OF NEW YORK et al., Appellants-Respondents. [866 NYS2d 117]—

Judgment, Supreme Court, New York County (Debra A. James, J.), entered September 12, 2006, upon a jury verdict in favor of plaintiffs and against defendants, unanimously reversed, on the law, without costs, and the complaint dismissed.

Plaintiff Christopher Hotaling was severely injured while employed as a guidance counselor at Martin Luther King, Jr. High School in Manhattan, when he was hit in the head with a door while in the process of exiting the building for a fire drill. He had walked through the swinging door on the left side of a double doorway leading to a stairwell, and, as he veered right toward the down staircase, a student pushed open the swinging door on the right side of the same double doorway, and that door struck plaintiff as it swung to the right. The basis for the jury's verdict against defendants was plaintiffs' claim that the swinging double doors were negligently designed.

The legal issue is not whether there was a way to construct the building in order to avoid any possibility of people being hit by opening doors in the manner experienced by plaintiff; it is whether the design of the building violated building safety standards applicable at the time it was built. Because such standards must take into account numerous safety concerns, they will not always be able to eliminate every source of possible injury. If a building was constructed in compliance with code specifications and industry standards applicable at the time, the owner is under no legal duty to modify the building thereafter in the wake of changed standards (*see Merino v New York City Tr. Auth.*, 218 AD2d 451, 457 [1996], *affd* 89 NY2d 824 [1996]).

Plaintiffs' expert, Leonard Lustbader, did not assert that the design of the doors leading to the stairwell violated the New York City Building Code in effect when the school was constructed in 1970. Rather, the expert asserted that the design of the double doors was unsafe, because the swing of the right-hand door as it opened placed that door into the path of a person going through the left-hand door and heading to the stairwell. He further asserted that the rate of speed at which the doors opened was excessive, because they lacked a snubbing or restricting mechanism to slow them down, and that the narrow viewing panel in the door, made of wire-reinforced glass, was unsafe because a person pushing the door open could not see clearly through it to determine whether there was a person in the way on the other side. He relied on "human factors" design standards.

Defendants' expert established, without challenge, that the building design, including the doors leading from the hallway to the stairwell, fully complied with the Building Code as it existed in 1970 when the building was built. He disputed the assertions of plaintiffs' expert that the design of the double door violated any other industry standards.

The absence of a violation of the New York City Building Code may not always establish, as a matter of law, the absence of negligent design. Especially if there is no Building Code provision directly applicable to a particular design feature, other types of industry-wide standards may be applicable to determine whether a party was negligent. In either event, however, in this matter there is insufficient support for plaintiffs' negligent design claim. Before a claimed industry standard is accepted by a court as applicable to the facts of a case, the expert must do more than merely assert a personal belief that the claimed industry-wide standard existed at the time the design was put in place. Nor are mere nonmandatory guidelines and recommendations sufficient (*see Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544-545 [2002]; *Capotosto v Roman Catholic Diocese of Rockville Ctr.*, 2 AD3d 384, 386 [2003]). The expert must offer concrete proof of the existence of the relied-upon standard as of the relevant time, such as "a published industry or professional standard or . . . evidence that such a practice had been generally accepted in the relevant industry" at the relevant time (*Jones v City of New York*, 32 AD3d 706, 707 [2006]).

In *Buchholz v Trump 767 Fifth Ave., LLC* (5 NY3d 1 [2005]), the Court affirmed a grant of summary judgment dismissing the complaint of a plaintiff who had accidentally fallen through a 13th-floor window in the course of roughhousing, where the plaintiff's expert had asserted that industry standards required installation of either tempered glass or a protective barrier bar, because "[p]laintiff's expert cited no authority, treatise, standard, building code, article or other corroborating evidence to support his assertion that good and accepted engineering and building safety practices" required these measures (*id.* at 8-9).

The essence of plaintiffs' claim was the assertion by Lustbader that the design of the doors at issue deviated from "human factors" design standards. Lustbader primarily relied upon the Human Factors Design Handbook, by Woodson and Tillman, for the industry standards he applied. However, he failed to establish that these purported standards were published, generally accepted, or even in existence in 1970. His testimony on that point was limited to his asserted "belief" that the first edition of the handbook "goes back some 30, 40 years," and that "the

early versions predate 1970." However, not only did he fail to establish the existence of any such pre-1970 version, but also he did not verify that any such purported pre-1970 version contained the same standards as the later edition upon which he relied. Indeed, defendants established in their posttrial motion that the first edition of the Woodson handbook was published in 1981, rendering Lustbader's reliance on the standards set forth in the handbook inapplicable as a matter of law.

As to plaintiffs' contention that, although the handbook had not yet been published, the underlying principles were widely accepted prior to 1970, they merely cite three cases that discuss the admissibility of testimony regarding human factors standards without addressing whether the standard existed at the relevant time so as to be applicable to the facts at issue (*see Wichy v City of New York*, 304 AD2d 755 [2003]; *Nowlin v City of New York*, 182 AD2d 376 [1992], *affd* 81 NY2d 81 [1993]; *Elmlinger v Board of Educ. of Town of Grand Is.*, 132 AD2d 923, 924 [1987]). While expert testimony as to human factors design standards has been ruled admissible, nevertheless, plaintiffs' expert failed to establish that the human factors design industry standards he relied upon were published or in general acceptance in the building construction industry in 1970.

Since the testimony of plaintiffs' expert failed to support plaintiffs' claim that the design of the doors in question violated accepted industry standards at the time the school was built, plaintiffs failed as a matter of law to make out a prima facie case of negligent design. The judgment must therefore be reversed and the complaint dismissed. Concur—Lippman, P.J., Saxe, Gonzalez and Nardelli, JJ.