[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-14673

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 26, 2009
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-01533-CV-ORL-18DAB

THE TITAN CORPORATION, a
foreign corporation authorized
to transact business in Florida,

                                        Plaintiff-Counter-
                                        Defendant-Appellee,

versus

SUPPORT SYSTEMS ASSOCIATES, INC.,
a foreign corporation authorized to
transact business in Florida,

                                        Defendant-Counter-
                                        Claimant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 26, 2009)

Before BARKETT, HILL and ANDERSON, Circuit Judges.

HILL, Circuit Judge:

The Titan Corporation sued Support Systems Associates, Inc. for failure to make payments to it under a contract and the district court awarded it partial summary judgment. After final judgment awarding damages was entered, the defendant brought this appeal.

## I.

Support Systems Associates, Inc. ("SSAI") provides logistics and engineering services to the government, primarily the Department of Defense. In 2003, SSAI and the Department of the Air Force (the "Air Force") entered into a contract for the development of a replacement for certain computer modules used in special operations forces aircraft. Soon after SSAI entered into this contract, SSAI entered into a subcontract with The Titan Corporation ("Titan") to develop the modules (the "Development Subcontract"). According to SSAI, Titan indicated it would have working prototypes of the modules by July 2004. Titan did not develop working prototypes by that date, but informed SSAI that it was making progress with the development of the modules.

In September of 2004, the Air Force awarded a contract to SSAI for the

production of the computer modules.[1]  On September 30, SSAI sent a letter of intent to award a production subcontract to Titan that authorized it to initiate material purchasing and charge labor hours on "this contract."  Although never a formal contract, SSAI and Titan agree that they entered into a binding contract for the production of the modules (the "Production Subcontract")supported by a series of draft documents.

The Production Subcontract provided for Titan to receive progress payments and set forth procedures for invoicing and payment.  Pursuant to the subcontract, Titan submitted its invoice and the required data to SSAI for its first progress payment under the Production Subcontract in the amount of $1,081,915.78, which represented ninety percent of the start-up costs allegedly incurred by Titan from September 29, 2004 through October 22, 2004.  SSAI, in turn, submitted this invoice to the Air Force on November 17, 2004.  In December 2004, SSAI received Titan's progress payment from the Air Force for the invoice.  It did not forward the payment to Titan.[2]  On March 14, 2005, SSAI directed Titan to discontinue all work on the Development and Production Subcontracts.

In this lawsuit, Titan contends that SSAI breached the Production

---

[1]SSAI and Titan agree that the award was prompted by the drawing near of the end of the federal fiscal year and the need to commit the funds or lose them.

[2]SSAI claims that it later returned the funds to the Air Force.

Subcontract by failing to pay Titan the progress payment it received from the Air Force. The district court agreed and awarded it summary judgment. We review this grant of summary judgment *de novo*. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## II.

The parties do not dispute that Titan submitted an invoice for a progress payment nor that the terms of the Production Subcontract provided for such payments. Nor do they dispute that SSAI authorized Titan to begin purchasing materials and charging labor to the Production Subcontract.

Rather, SSAI argues that Titan was not entitled to the progress payment under the Production Subcontract because it had not delivered the working prototypes required by the Development Subcontract. Thus, the issue on appeal is whether Titan's entitlement to the Production Subcontract progress payment was contingent upon the making of progress under the Development Subcontract.

The resolution of this issue depends upon an interpretation of the Production Subcontract. This is a question of law and one that is ripe for summary judgment. *Sevenson Envtl Srvs, Inc. v. Shaw Envtl, Inc.* 477 F.3d 1361, 1364-65 (Fed. Cir 2007).

## III.

4

Although a formal Production Subcontract was never executed, the parties agreed upon all of the material terms. One of these terms was the inclusion of the Federal Acquisition Regulation 52.232-16(c) (April 2003) (the "FAR") regarding the making of progress payments to subcontractors.[3] Under this regulation, SSAI was permitted to "reduce or suspend progress payments" to its subcontractors if SSAI were to find "on substantial evidence" that the subcontractor's "[p]erformance of this contract is endangered by its . . . failure to make progress . . . ." SSAI argues that Titan's failure to deliver working prototypes, as required by the Development Subcontract, constituted such a failure, thereby authorizing it to withhold the Production Subcontract progress payment applied for by Titan, requested by SSAI, and sent by the Air Force.

Titan, however, points out that the FAR language unambiguously conditions Production Subcontract progress payments solely upon progress being made in the performance of "this contract." Since this language clearly refers to the Production Subcontract, Titan contends that it is entitled to the progress payment.

SSAI contends, however, that this language does "no[t] limit what SSAI

_____

[3] Titan contends, and the record supports, that SSAI never relied upon FAR 52.232-16(c) to support its right to withhold payment until after the district court entered its order granting Titan partial summary judgment. We assume without deciding that SSAI did not waive its right to make this argument.

might consider in assessing Titan's progress." Under SSAI's interpretation of the contract, it could consider Titan's progress under the Production Subcontract, the Development Subcontract or any other federal contract that Titan might have had with SSAI in evaluating Titan's progress for Production Subcontract payment purposes. This is an unacceptable interpretation of the contract and regulation.

When interpreting the Production Subcontract, we must give the ordinary and plain meaning to its words and interpret it in a way that does not render any portion of it meaningless. *See California Or. Broad., Inc., v. United States*, 74 Fed. Cl. 394 (2006). The ordinary and plain meaning of the words "in this contract" clearly refer to the contract in which these words appear. This is the Production Subcontract. Under SSAI's interpretation, progress payments under the Production Subcontract and its incorporated federal regulation could be conditioned not only upon progress under "this" contract – the Production Subcontract – but upon *any* contract.[4] The words "in this contract" would be rendered meaningless – an unacceptable interpretation of the ordinary meaning of the words.

---

[4]Similarly, we decline to interpret the regulations requirement that costs be "reasonable" to mean anything more than reasonable costs for the progress made under the Production Subcontract. We reject SSAI's argument that the reasonableness of Titan's production costs was to be measured by its progress under the Development Subcontract.

6

Additional support for this conclusion is found in the absence of any reference in the Production Subcontract that payments for progress under it were in any way conditioned upon or subject to progress under the Development Subcontract. Clearly, if two separate entities had been awarded the Development and Production Subcontracts, such an interpretation of either one that would condition payment to one upon progress by the other would be an unacceptable interpretation of the federal regulation. It is only because one entity received both contracts in this case that this argument may be advanced at all.

Furthermore, had the parties intended that progress payments under the Production Subcontract be conditioned upon progress under the Development Subcontract, they could easily have documented such an understanding.

Finally, SSAI urges that even if we reject its interpretation of the federal regulation as a matter of law, that somehow the interpretation of the Production Subcontract becomes one of fact. We reject this contention. In order to hold that the interpretation of the Production Subcontract and its accompanying regulation is a matter of fact, we would have to find that the contract is vague or ambiguous on the issue of progress "in this contract." *Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed. Cir. 1993). This we cannot do. The words "in this contract" are not ambiguous, as we noted above. They say what they mean,

and mean what they say.  Under such circumstances, we are not permitted to make them say something else.  *See Blonder & Co., Inc. v. Citibank, N.A.*, 808 N.Y.S.2d 214 (N.Y. App. 2006).

## III.

Accordingly, the judgment of the district court is due to be

AFFIRMED.